**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Ramon CANALS–JIMENEZ,
Defendant–Appellant.**

No. 90–5845.

United States Court of Appeals,
Eleventh Circuit.

Oct. 4, 1991.

Alison M. Igoe, Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Kerry S. Baron, Ft. Lauderdale, Fla., Linda Collins Hertz, Anne Ruth Schultz, Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and WILLIAMS [1], Senior Circuit Judge.

JERRE S. WILLIAMS, Senior Circuit Judge:

Appellant Juan Ramon Canals–Jiminez was charged with being "found in" the United States after deportation without the Attorney General's consent in violation of 8 U.S.C. § 1326, a provision of the Immigration and Nationality Act. Appellant was found guilty, and the judge sentenced him to fourteen months in jail and a fifty dollar assessment.

Appellant asserts three bases for reversal of the district court's findings: (1) The government failed to prove beyond a reasonable doubt that the defendant was "found in" the United States in violation of the law; (2) The difference between the offense charged in the indictment and the proof offered by the government at trial constituted a fatal variance; and (3) the trial court abused its discretion when it refused to instruct the jury that an alien who has been placed in exclusion proceedings cannot be "found in" the United States. Inasmuch as we reverse the trial court's decision due to the government's failure to prove beyond a reasonable doubt that the defendant was "found in" the United States, we find it unnecessary to address the other two contentions.

## I. FACTS

After conviction for distribution of cocaine, Canals was deported from the United States on November 3, 1989. Thereafter, on April 20, 1990 Canals arrived in Miami from Santa Domingo, Dominican Republic, on an American Airlines flight. After deboarding the plane and proceeding past several shops and restaurants, he approached Immigration and Naturalization Service ("INS") inspector Henry Langlois. When Canals presented his passport, inspector Langlois noticed that it contained an "addit" stamp which is tantamount to a

---

1. Honorable Jerre S. Williams, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig-   nation.

temporary green card granting residence status. Because of the high number of forgeries of such stamps, Langlois referred Canals to secondary examination.

Inspector Long D. Kaiser, who was assigned the secondary inspection area, took a sworn statement from Canals. Canals explained that he was a former resident of the United States who had been deported. Canals further explained that he was not attempting to come to the United States but was on his way to Montreal for pleasure, and that his flight only stopped in the United States. After the interview, Kaiser escorted Canals back to a waiting room. Kaiser then approached Senior INS inspector Craig Robinson, who authorized Canals' arrest.

Several days later, Robinson interviewed Canals, who had remained in INS custody. Contrary to his prior statement, Canals told Robinson that he was unemployed and was going to Canada to find work. At no time did Canals mention that he was en route to Montreal to meet his parents and son, as he would later claim at trial.

After the interview, Robinson examined Canals' personal effects. Canals had brought with him nearly $600 in United States currency and various items of clothing. He also had a round trip airline ticket, leaving Santo Domingo on April 20, 1990 and arriving in Miami that same day and then leaving Miami for Santo Domingo on April 24, 1990.

On May 1, 1990, a grand jury returned a one count indictment charging Juan Canals, having been previously deported to the Dominican Republic on or about November 3, 1989, with being "found in" the United States knowingly and unlawfully and without the Attorney General's consent in violation of 8 U.S.C. § 1326(a).

In his defense at trial, Canals presented evidence showing that although he had no ticket, he had made round trip reservations from Miami to Montreal on Air Canada. He also offered proof that no airline offered nonstop service from Santo Domingo to Montreal. Canals' mother testified that she, her husband, and Canals' son had planned a trip to Montreal concurrent with Canals' proposed visit.

At the close of the trial, Canals requested the court to instruct the jury on the legal definition of the term "found in" as used in 8 U.S.C. § 1326, but the trial judge refused. The trial judge again refused a similar request to give this instruction after the jury sent the following note:

> We need direction from Judge Nesbitt concerning the following: If the defendant knew he had to land in the U.S. to buy a ticket to go on to Canada, but if his intent was to go on to Canada how does that answer the question in the indictment of being "found in the U.S. knowingly and unlawfully?"

Instead the court referred the jury to the court's instructions as previously given.[2] The jury found Canals guilty as charged.

## II. STATUTORY CONSTRUCTION

■ Because there are no factual issues involved, the resolution of this dispute turns on statutory construction. There is no dispute that Canals was physically within the boundaries of the United States. The issue is whether Canals was, as he was charged in the indictment, "found in" the United States in violation of 8 U.S.C. § 1326(a). This statute provides in pertinent part:

> [A]ny alien who—
> (1) has been arrested and deported or excluded and deported and thereafter
> (2) *enters, attempts to enter, or is at any time found in, the United States,* unless (A) prior to his reembarkation at a place outside the United States, application for admission from foreign contig-

2. The trial judge never actually defined "found in". Her instructions were as follows: "The defendant can be found guilty of this offense only if all of the following elements are proved beyond a reasonable doubt. One, that the defendant was an alien at the times alleged in the indictment. Two, that the defendant had been arrested and deported from the United States. Three, that thereafter the defendant was found unlawfully present in the United States." The judge proceeded to define "alien" and "national of the United States," but she never defined "found in" for the jury.

uous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both. (Emphasis added). Canals' contention, with which we agree, is that "found in" must have a different meaning from "enters" and "attempts to enter." Canals might have been guilty of attempting to enter, but he was not guilty of being found in the United States.

A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage. *See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–71 (5th Cir. 1981); *Meltzer v. Board of Public Instruction of Orange County, Florida*, 548 F.2d 559, 578 (5th Cir.1977), *aff'd in part, rev'd in part* 577 F.2d 311 (5th Cir.1978) (en banc), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). In interpreting a different section of the Immigration and Nationality Act of 1952, the Supreme Court applied this elemental rule when it stated, "The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible to every clause and word of a statute rather than to emasculate an entire section, as the Government's interpretation requires." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citations omitted).

In applying the analysis to the statute at hand, we determine that the phrase "found in" must have a different meaning than the word "enters." Our construction of the statute is in accord with the legislative history as discussed in *United States v. DiSantillo*, 615 F.2d 128 (3rd Cir.1980). When Congress reenacted the statute in 1952, it added the term "found," but it did not remove the term "enters." This indicates that Congress intended "found" to

have a different meaning than "enters;" otherwise Congress could have completely removed "enters" from the statute and made it a crime any time an alien "attempts to enter" or is "found in the United States." *Id.* at 135.

This court previously faced a similar issue in construing Section 1326 and reached a similar result in *United States v. Wong Kim Bo*, 472 F.2d 720 (5th Cir.1972). We had to determine whether the words "arrested and" in Section 1326 were meaningless. We stated:

> The Immigration and Nationality Act represents the final product of a most intensive and searching investigation and study over a three year period. It would be absurd for this court to think that Congress inadvertently left 'intent' out of Section 1326. It would be similarly absurd for this court to think that Congress left the words 'arrest and' *in* Section 1326 inadvertently.

*Id.* at 722 (citations omitted) (emphasis in original). Using this logic, "it would be similarly absurd" for us to now think Congress inadvertently left the term "enters" in Section 1326.

In order for "found in" and "enters" to have different meanings, thus to avoid "enters" being a mere redundancy, "found in" must apply to aliens who have entered surreptitiously, bypassing a recognized immigration port of entry. The phrase "found in" is synonymous with "discovered in." Any party who voluntarily approaches an INS station cannot be said to have been found or discovered in the United States. Any alien who seeks admission through a recognized immigration port of entry might be guilty of entering or attempting to enter the United States but not of being found in the United States. Congress added the phrase "found in" to alleviate the problem of prosecuting aliens who enter in some illegal manner. *U.S. v. DiSantillo*, 615 F.2d at 135.

■ Under the interpretation urged by the government, Canals was "in" the United States and thus subject to being "found in" the United States the moment he stepped off the airplane. The law is other-

wise. In determining whether an alien detained at Ellis Island pending deportation proceedings was "in" the United States, the Supreme Court declared, "[W]hile she was at Ellis Island she was to be regarded as stopped at the boundary line and kept there unless and until her right to enter should be declared.... She was still in theory of law at the boundary line and had gained no foothold in the United States." *Kaplan v. Tod*, 267 U.S. 228, 230, 45 S.Ct. 257, 257–58, 69 L.Ed. 585 (1925). More recently, the Court has stated, "For over a half century this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Leng May Ma v. Barber*, 357 U.S. 185, 188, 78 S.Ct. 1072, 1074, 2 L.Ed.2d 1246 (1958).

The government offers two arguments. Each falls far short of being persuasive. The government argues that the Supreme Court's interpretation of being in the United States as enunciated in *Kaplan v. Tod* and *Leng May Ma v. Barber* applies only in civil cases and not in criminal cases such as the present case. This contention requires that the same words be more stringently applied in criminal cases against an accused than in civil cases. But to do so is contrary to well established principles of statutory interpretation. Criminal statutes require greater clarity and precision as they are applied against subjects than civil statutes. In any event the Immigration and Nationality Act is a single, self-contained act which applies to both civil and criminal proceedings. Section 1101 provides definitions for various terms used throughout the Act, and it makes no distinctions between the civil and criminal provisions of the Act. Thus, the Supreme Court precedents defining when a person is in the United States under the Act must be applied to both civil and criminal proceedings.

Related to this argument, the government also asserts that our interpretation of "found in" will create a "no-man's" land controlled by no law resulting in a suspect being beyond prosecution. The government claims that this no-man's land would consist of the territory and time between the airline gate and the INS station. This argument is frivolous. In the instant case, Canals was not beyond prosecution due to our definition of "found in." In fact, the government could logically have prosecuted Canals under Section 1326 for attempting to enter the United States. Presumably, the government did not do this due to its fear that it could not establish that Canals had the intent to enter. The government, however, did undertake to prosecute him for being "found in" the United States, apparently to avoid the need for proof of a specific intent.

The government further contends that if Canals had robbed one of the numerous stores located between his gate and the INS station, he would not be subject to prosecution because we have determined that he is not in the United States. If a party robbed a store in this so-called no-man's land, he would then be subject to prosecution under a statute other than the Immigration and Nationality Act. "Found in" as provided in the Immigration and Nationality Act clearly does not apply to any other criminal statutes, state or federal.

■■■ Once we determine that "found in" in Section 1326 applies only to situations in which an alien is discovered in the United States after entering the country surreptitiously by bypassing recognized immigration ports of entry, it is beyond dispute that the government did not prove Canals guilt beyond a reasonable doubt. On review, a conviction must be reversed if, after viewing all the evidence and drawing all reasonable inferences in a light most favorable to the government, a jury must have reasonable doubt as to a defendant's guilt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Alvarez*, 735 F.2d 461, 468 (11th Cir.1984). In the case at hand, there is no dispute that Canals, if he did try to enter the United States, tried to do so by presenting himself at a recognized immigration port of entry, instead of surreptitiously entering the country. Thus, the government did not prove beyond a

reasonable doubt that he was "found in" the United States.

## III. VAGUENESS

On argument before this Court, inquiries from the bench suggested a federal question which neither side had argued at any prior stage of these proceedings. The question is whether 8 U.S.C. § 1326(a) is so vague as to violate a defendant's due process rights. Because of the importance of this issue, the parties were given an additional twenty days to file supplemental briefs on it, and we now address it.

The Supreme Court, in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), discussed the issue of vague statutes:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that *he may act accordingly.* Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* at 108–09, 92 S.Ct. at 2298–99 (emphasis added). The provision in question, 8 U.S.C. § 1326(a), appears to violate this principle. Read literally, the crime of being "found in" the United States is not actually committed by the defendant, but is created by the government at the time of apprehension. The actor is the government because the accused can be said to have committed the crime not by being in the United States but only because some governmental authority found him in the United States. The Supreme Court, however, has stated

that a statute must put a party on notice so that "*he* may act accordingly." *Id.* (emphasis added). Section 1326 does not provide any guidance as to how a party must curtail his conduct so as to comport with the requirements of the statute because it is not his conduct which creates criminal liability. *See also United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963) (holding that "Void for vagueness simply means that criminal liability should not attach where one could not reasonably understand that *his* contemplated conduct is proscribed") (emphasis added); *Stansberry v. Holmes,* 613 F.2d 1285, 1289 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980) (stating that "Any statute or ordinance which proscribes certain conduct must be sufficiently definite to give a person of ordinary intelligence fair notice that *his* contemplated conduct is forbidden by statute") (emphasis added) (citations omitted).

We recognize, however, that a plausible argument can be made that the statute does advise a defendant as to what conduct by that defendant will avoid the commission of a crime. He could leave the United States. Section 1326 was passed to fulfill the purpose of being able to prosecute aliens who are illegally present in the country and entered the country surreptitiously. It is equally important to note that although no other reported cases discuss the question of constitutional vagueness, there has been appellate review of cases in which defendants were convicted of being "found in" the United States, including authority controlling in this Court. *See, e.g., United States v. Oris,* 598 F.2d 428 (5th Cir.), *cert. denied,* 444 U.S. 945, 100 S.Ct. 304, 62 L.Ed.2d 313 (1979); *United States v. Gonzalez–Sandoval,* 894 F.2d 1043 (9th Cir. 1990); *United States v. Anton,* 888 F.2d 53 (7th Cir.1989). In none of these cases did the court deem the issue of vagueness important enough to address.

We, therefore, do recognize doubts as to the validity of the "found in" concept in the statute. Applying the concept to surreptitious entry situations, however, "found in" may well properly be an offense which is

not void for vagueness. But this is not such a case. We do not decide the issue of the constitutionality of this portion of the statute against a claim of void for vagueness because it is not necessary to the decision of this case.

## IV. CONCLUSION

We conclude that 8 U.S.C. § 1326, under which Canals was convicted, provides for three separate and distinct violations of the law—entering, attempting to enter, and being found in the United States. The trial failed to prove that Canals was "found in" the United States. Whether he was in violation of the law under either of the other offenses is not before us. We reverse the judgment of the district court and direct entry of a judgment of acquittal.

REVERSED and RENDERED.