**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fredo GAY, Defendant–Appellant.**

No. 92–4210.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1993.

Bonnie Phillips–Williams, Miami, FL, Richard C. Klugh, Asst. Federal Public Defenders, Ft. Lauderdale, FL, for defendant-appellant.

James McAdams, III, Nina Stillman Mandel, Linda C. Hertz, Anne Hayes, Lisa A. Hirsch, U.S. Attys., Miami, FL, for plaintiff-appellee.

Before ANDERSON, Circuit Judge, DYER and PECK *, Senior Circuit Judges.

ANDERSON, Circuit Judge:

Appellant challenges his conviction of being found in the United States after deportation without the Attorney General's consent in violation of 8 U.S.C. § 1326. The primary issue on this appeal is whether the decision of *United States v. Canals–Jimenez*, 943 F.2d 1284 (11th Cir.1991) dictates that the definition of "found in" under 8 U.S.C. § 1326 applies only to those aliens found in the United States following a surreptitious entry by bypassing recognized immigration ports of entry.

FACTS

Appellant Fredo Gay, a citizen of Haiti, was convicted on May 12, 1986, in a Florida state court of possession of a controlled substance. As a result of this conviction, appellant was deported from the United States in 1987. At the time of his deportation, appellant signed Immigration & Naturalization Service (INS) Form I–294, thereby acknowledging that his return to the United States would subject him to criminal charges.

Prior to deportation, appellant failed to present his passport to INS, causing INS to obtain a provisional passport for his use in departing the country. As a result, INS could not note appellant's deportation on his regular passport. Further, appellant did not surrender his alien registration card (green card) when he was deported, although INS

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, was a member of the panel which heard oral argument but due to his death on September 7, 1993, did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

routinely requests the return of such documentation upon deportation.

INS places the names of all deported persons in an automated "lookout" system and a "service lookout book" to provide notice to INS throughout the nation of the deportation. Thus, a person so noted is prevented from re-entering the United States if he subsequently presents himself to INS and attempts to re-enter. In 1987, when appellant was deported, INS required four to six months to enter a name into the lookout system. This resulted in a window of several months in which a person who had been deported could return to the United States, with INS being unaware of the deportation, unless the person seeking to re-enter volunteered such information.

Using his original passport, appellant returned to the United States one month after his deportation, re-entering through Kennedy International Airport on October 22, 1987. Appellant neither sought nor received permission from the Attorney General to re-enter the United States, and thus his re-entry was illegal. During 1990, in connection with his employment as a sky cap at the Miami International Airport, appellant applied to the United States Customs Service (Customs) to gain access to secured areas at the airport. On the Customs application form, appellant responded negatively to a question that asked whether he had ever been convicted of a crime. Appellant signed a certification on the Customs application form, certifying that all statements contained therein were true, complete, and correct.

Upon investigation of appellant's application, Customs Special Agent Andrew Diamond determined that appellant had been convicted and deported. Agent Diamond arrested appellant at the airport on April 2, 1991. After being advised of his rights, appellant admitted his prior deportation, stating that he had been told that he would have to wait more than a year before he could apply to re-enter the United States. Appellant stated that he had returned to the United States approximately one month later without reapplying for permission. Regarding his prior conviction, appellant told the arresting officer that he did not feel he had been guilty of the offense and that it had been a misunderstanding.

On April 9, 1991, appellant was indicted on charges of being found in the United States following deportation, in violation of 8 U.S.C. § 1326 (Count I) and making a false statement in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001 (Count II). The case proceeded to a jury trial on September 30, 1991, and on October 7, 1991, the jury returned a verdict of guilty as to Count I and not guilty as to Count II. On February 20, 1992, appellant was sentenced to 18 months' imprisonment, two years' supervised release and a $50.00 assessment.

Following the trial, appellant filed a motion to exclude his prior conviction from the presentence report. Arguing his prior conviction constitutionally invalid and therefore irrelevant to sentencing, appellant filed with the district court the transcript of the state court appearance in which he changed his plea to no contest. The government opposed the exclusion, arguing that appellant had failed to show his conviction was constitutionally invalid.

At the sentencing hearing, the court stated that it had reviewed the transcript of the earlier state court proceeding and felt that a Rule 11 violation may have occurred but that it could not state that a constitutional violation had occurred. The court declined to conduct an evidentiary hearing to consider appellant's collateral attack of the prior conviction. In declining, the court reasoned the appellant had not taken any steps earlier to have his conviction set aside and that the sentencing hearing was not the best forum for such an attack.

We now affirm. We discuss appellant's primary claim concerning the scope of *United States v. Canals–Jimenez, supra,* and appellant's contention that the district court should have permitted collateral attack of the prior conviction at sentencing. The other issues raised by appellant on appeal are without merit and warrant no discussion.

## ANALYSIS

■ The issue is whether appellant Gay was, as he was charged in the indictment,

"found in" the United States in violation of 8 U.S.C. § 1326(a). This statute provides in pertinent part:

> [A]ny alien who—
> (1) has been arrested and deported or excluded and deported and thereafter
> (2) enters, attempts to enter, or is at any time found in, the United States unless (A) prior to his reembarkation at a place outside the United States, application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a).

Appellant contends our decision in *United States v. Canals–Jimenez*, 943 F.2d 1284 (11th Cir.1991) controls and that appellant was not "found in" the United States within the definition of the statute because *Canals* limited the definition of "found in" to aliens who were found in the United States following a surreptitious entry by passing any recognized immigration port of entry. Gay points out that he did not enter surreptitiously and thus argues that his conviction cannot stand. The government asserts that the *Canals* reference to surreptitious entry constituted *dicta* unnecessary to its resolution of the underlying question of statutory construction involved in that case. We agree.

In *United States v. Canals–Jimenez*, 943 F.2d 1284 (11th Cir.1991), this court reversed the conviction of a defendant charged with being "found in" the United States where INS officials stopped a deported alien at the airport upon his presentation of a passport containing a forged "addit" stamp.[1] In reversing, the court held that the defendant, who had been detained at an immigration port of entry and thereby prevented from entering the United States, could not have been "found in" the United States. *Id.* at

1287–88. The court cited to the long-established principle that "the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Id.* at 1288 (quoting *Leng May Me v. Barber*, 357 U.S. 185, 188, 78 S.Ct. 1072, 1074, 2 L.Ed.2d 1246 (1958)). Accordingly, the court concluded the defendant in *Canals–Jimenez* could not have been "found in" the United States because he had not entered the United States prior to his arrest.

Gay argues that *Canals* stands for the proposition that the term "found in" has a very restrictive meaning—i.e. "found in" the United States after a surreptitious entry bypassing recognized immigration ports of entry. There is language in *Canals* that superficially supports that interpretation, e.g., "[i]n order for 'found-in' and 'enters' to have different meanings, thus to avoid 'enters' being a mere redundancy, 'found in' must apply to aliens who have entered surreptitiously, bypassing a recognized immigration port of entry." *Id.* at 1287. We conclude that the *Canals* court was merely using a surreptitious entry as the most obvious example of an illegal entry which would not be detected by immigration officials, and after which an alien who had illegally entered might be "found in" the United States. This reading is borne out by *Canals* language which appears four sentences following the above quoted language—"Congress added the phrase 'found in' to alleviate the problem of prosecuting aliens who enter *in some illegal manner.*" *Id.* at 1287 (emphasis added). Thus, we conclude that the reference in *Canals* to surreptitious entry is mere dicta and is not controlling.

In this case, it is clear that appellant Gay was "found in" the United States following his entry "in some illegal manner." *Canals*, 943 F.2d at 1287. We conclude that appellant was "found in" the United States within the contemplation of 8 U.S.C. § 1326. Accordingly, we affirm Gay's conviction.

---

1. An "addit" stamp is tantamount to a temporary green card granting residence status. *Id.* at 1285–86.

■ Turning to appellant's contention that the district court erred at sentencing by denying him the opportunity to show that his prior conviction was unconstitutionally obtained, we find this issue controlled by our recent decision in *United States v. Roman*, 989 F.2d 1117 (11th Cir.1993). In *Roman*, we held a district court may not examine the constitutionality of earlier state convictions for the first time when calculating the defendant's criminal history absent a showing the convictions were "presumptively void." *Id.* at 1118, 1120. Because appellant Gay does not point to any reason why the prior conviction might have been "presumptively void," we uphold the district court's refusal to permit the collateral attack.

Accordingly, the judgment of the district court is

AFFIRMED.