**UNITED STATES of America**

v.

**Jose Remedio MANCEBO–SANTIAGO, Defendant.**

**No. 94 Cr. 827 (JGK).**

United States District Court, S.D. New York.

Feb. 2, 1995.

Mary Jo White, U.S. Atty., Hector Gonzalez, Asst. U.S. Atty., U.S. Atty's. Office, Southern Dist. of N.Y., New York City, for government.

Lawrence H. Schoenbach, Jonathan Dobbs, Law Offices of Lawrence H. Schoenbach, New York City, for defendant.

## *OPINION ORDER*

KOELTL, District Judge.

The Government seeks an *in limine* ruling in this prosecution under 8 U.S.C. § 1326[1] for illegal reentry into the United States after arrest and deportation. The government argues that the defendant, Jose Remedio Mancebo–Santiago, should be precluded on grounds of irrelevance and considerations under Federal Rule of Evidence 403 from submitting evidence of the following at trial:

---

1. 8 U.S.C. § 1326 provides that:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or

(B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

8 U.S.C. § 1326 (1994).

(1) That the defendant did not know that he would be committing a crime by reentering the United States subsequent to his deportation without obtaining the express consent of the Attorney General to reapply for admission;

(2) That the defendant lacked an intent to violate the law when he reentered the United States subsequent to his deportation;

(3) That the defendant was not informed at the time of his deportation that he could not reenter the United States without first obtaining the express permission of the Attorney General to reapply for readmission or that if he so reentered he could be criminally prosecuted;

(4) That the defendant presented himself at an Immigration and Naturalization Service ("INS") inspection point in Puerto Rico and was admitted into the United States.

Mancebo–Santiago does not dispute that he has been previously arrested and deported pursuant to a warrant of deportation. In his motion papers, he represents that he is a citizen of the Dominican Republic and that on December 1, 1990 he became a resident alien of the United States pursuant to an amnesty program. He admits being deported in June, 1992 after having been convicted of felonies in the state of New York. Mancebo–Santiago alleges that at the time of his deportation the Immigration and Naturalization Service ("INS") did not take back his alien registration card ("green card") and did not inform him that reentry without the express consent of the Attorney General to reapply for admission was illegal. He further alleges that several months after his deportation he flew to Puerto Rico and was permitted to enter the United States upon presentation of his Dominican Republic passport and his green card. This reentry is the subject of the present prosecution. Both parties argue that a decision on the motion *in limine* is important to them, because it would enable them to know what types of evidence to refer to in opening statements as well as what the scope of proof will be at trial. For the reasons stated below, the government's motion is granted.

# I

The government argues that the first two categories of evidence, relating to the defendant's intent and knowledge, are irrelevant, because § 1326 does not require a defendant to possess any particular mental state nor does it allow any particular mental state to serve as a defense. The essential elements of a § 1326 offense which the Government must prove are that the defendant is (1) an alien, (2) who has been arrested, and (3) deported, and (4) thereafter is found in the United States, (5) without having obtained the specified consent of the Attorney General. *United States v. Quezada*, 754 F.2d 1190, 1192 (5th Cir.1985); *United States v. Hernandez*, 693 F.2d 996, 998 (10th Cir. 1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1231, 75 L.Ed.2d 464 (1983).

In *United States v. Champegnie*, 925 F.2d 54 (2d Cir.1991), the Court of Appeals for the Second Circuit unequivocally affirmed the government's position. The court held that a good faith or mistaken belief on the part of an alien that he or she had lawfully reentered the United States is not a defense in a § 1326 prosecution. The court stated that:

> The statute contains no language requiring proof of a particular mental state. It simply states that a previously deported alien may not reenter the United States without the express consent, obtained in advance, of the Attorney General. We read the statute to mean what it says: A previously deported alien who reenters the United States does so at his or her peril, and any subjective belief as to the legality of that act is irrelevant.

*Champegnie*, 925 F.2d at 55–56 (citing *United States v. Anton*, 683 F.2d 1011, 1019 (7th Cir.1982) (Posner, J., dissenting)); *see also United States v. Miranda–Enriquez*, 842 F.2d 1211, 1212–13 (10th Cir.) (holding there is no defense of mistaken belief of legality of reentry under § 1326, because the crime is a general intent crime and a mistake instruction is appropriate only if criminal intent plays a part in the crime charged), *cert. denied*, 488 U.S. 836, 109 S.Ct. 100, 102 L.Ed.2d 75 (1988); *United States v. Espinoza–Leon*, 873 F.2d 743, 745–46 (4th Cir.)

(holding that mistaken belief as to the legality of reentry is no defense, because only general intent must be proven under § 1326), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); *contra United States v. Anton,* 683 F.2d 1011 (7th Cir.1982) (holding that there is a mistake of law defense under § 1326 if a defendant reasonably believes that he or she had the consent of the Attorney General to reenter the United States). Similarly, courts have held that no specific intent is required to establish a violation of § 1326, but only a general intent to reenter the United States (i.e. a knowing and willful reentry). *See United States v. Newton,* 677 F.2d 16 (2d Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 111, 74 L.Ed.2d 98 (1982); *United States v. Hussein,* 675 F.2d 114 (6th Cir.), *cert. denied,* 459 U.S. 869, 103 S.Ct. 154, 74 L.Ed.2d 129 (1982); *Pena–Cabanillas v. United States,* 394 F.2d 785, 788–89 (9th Cir.1968). Thus evidence that a deportee who reentered without the requisite consent did not intend to violate the law when reentering or that he or she did not know that reentry was a crime is irrelevant. With the exception of the Court of Appeals for the Seventh Circuit, the courts of appeals that have considered the issue of whether § 1326 provides for a good faith or mistaken belief defense have held that it does not. Therefore, the Court will grant the government's motion *in limine* with respect to the first two categories of evidence. *See Fed.R.Evid.* 402 ("Evidence which is not relevant is not admissible").

## II

The third category of evidence that the government seeks to exclude is evidence probative of an alleged failure of immigration authorities to notify the defendant at the time of his deportation that he could not reenter the United States without first obtaining the express permission of the Attorney General to reapply for admission or to notify him that if he so reentered he could be criminally prosecuted. As explained above, such evidence is not relevant if offered to prove that a defendant reentered in good faith, not knowing that reentry without the express consent of the Attorney General to reapply was illegal.

However, a failure to notify a deportee of the consequences of reentry raises the question of whether due process requires such notification. If due process demands such notice, then evidence of a lack of notice would be probative in a § 1326 prosecution as probative of a constitutional defense.

An I–294 form is used by the INS to notify deportees of the consequences of reentering the United States without the express consent of the Attorney General to reapply for admission and of the procedures for reapplying for admission. Mancebo–Santiago alleges that he never received such a notice and that this should serve as the basis for a defense. However, at the argument of this motion, the defendant specifically denied that he was raising any due process claim arising from an alleged lack of notice.

In any case, as explained below, the I–294 notice is not a necessary requirement of due process. Moreover, it is not evident that the INS's goal in providing the notice is related to concerns about procedural fairness. In *United States v. Sanchez–Montoya,* 834 F.Supp. 315 (C.D.Cal.1993), *vacated on other grounds,* 30 F.3d 1168 (9th Cir.1994), the court observed that the apparent policy goal of Form I–294 is individual and general deterrence—"individual, by specifically informing the deportee, and general, by getting the word out through individual deportees to those contemplating similar conduct in this country and in the country to which the deportee returns." *Sanchez–Montoya,* 834 F.Supp. at 318. The court concluded that whatever the policy goals of Form I–294, the purpose of the form could not be to preclude deportees from arguing an ignorance of the law defense, because, "In short, no Court has held, and thus the INS could not reasonably believe, that a deportee might successfully raise a pure ignorance of the law defense under § 1326 (i.e., 'I didn't know the law forbade my return')." *Id.,* 834 F.Supp. at 318 (distinguishing *Anton* as creating a limited mistake of law defense when a defendant reasonably believed he or she had the consent of the Attorney General to lawfully return to the United States).

In *United States v. McCalla*, 38 F.3d 675 (3d Cir.1994), the Court of Appeals for the Third Circuit held that due process does not require limiting the sentence of an alien convicted under § 1326 to the length of the maximum sentence that the alien was notified of by an I–294 form as being applicable to illegal reentry. Upon his 1991 deportation, prior to his illegal reentry, McCalla was provided with an I–294 form that failed to reflect the 1988 amendment to § 1326, which provided a maximum sentence of fifteen years for illegally reentering after being convicted of an aggravated felony prior to deportation. Before 1988, the maximum sentence for a § 1326 violation was two years. The I–294 provided to McCalla indicated this was the maximum sentence to which he would be subject if he illegally reentered, but he was sentenced to a term of over nine years imprisonment pursuant to his conviction under § 1326 as amended.[2] The Court of Appeals for the Third Circuit held that the misstatement in the I–294 form did not violate McCalla's due process right to be notified of criminally culpable conduct, because the constitutionally requisite notice is to be looked for in the statute, not the administrative notice:

> Although the inaccuracy in Form I–294 was regrettable, perhaps inexcusable, due process requires that it is the criminal statute which must clearly set forth the activity which constitutes a crime and the punishment authorized for committing such a crime. *See United States v. Batchelder*, 442 U.S. 114, 121, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) (a statute which ambiguously specifies criminal conduct or the penalties authorized upon conviction raises a constitutional question). Section 1326(b)(2) clearly comports with the due process requirement of fair notice.

*McCalla*, 38 F.3d at 679. Other courts of appeals to have considered this issue have reached the same conclusion. *United States v. Samaniego–Rodriguez*, 32 F.3d 242, 244 (7th Cir.1994) ("Thus, regardless of the inaccuracy of Form I–294, the statute under which the defendants were convicted provid-

ed notice adequate to satisfy the requirements of due process"); *United States v. Sanchez–Montoya*, 30 F.3d 1168, 1169 (9th Cir.1994) ("[N]either due process nor principles of equitable estoppel precludes imposing a prison term exceeding two years for illegal reentry on a defendant who had been advised erroneously by the INS before deportation that the maximum penalty for that offense was two years"); *United States v. Perez–Torres*, 15 F.3d 403, 406 (5th Cir.) ("[R]egardless of the inaccuracy of Form I–294, the statute [8 U.S.C. § 1326] under which Perez was convicted provided notice adequate to satisfy the requirements of due process"), *cert. denied,* —— U.S. ——, 115 S.Ct. 125, 130 L.Ed.2d 69 (1994). Given a precedent set by four courts of appeals that the notice of criminal penalties required by due process is to be looked for only in § 1326 itself and that other forms of notice are therefore irrelevant, this Court concludes that the clear and unambiguous terms of § 1326 provided Mancebo–Santiago with sufficient notice of the illegality of reentering the country after deportation to satisfy the requirements of due process. *See generally, United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute"). Due to the irrelevance of any other notice or lack of notice, the Court will grant the government's motion in limine with respect to the third category of evidence. *See Fed.R.Evid.* 402.

Finally, in *United States v. Wong Kim Bo*, 466 F.2d 1298 (5th Cir.1972), the Court of Appeals for the Fifth Circuit concluded, in dicta, that the issuance of a Warrant of Deportation "would provide the requisite notice to trigger criminal sanctions for illegal reentry thereafter." *Wong Kim Bo*, 466 F.2d at 1305. A warrant of deportation provides the person to whom it is directed with notice of his or her arrest and of an imminent deportation and therefore it puts the person on notice that he or she is clearly subject to the prohibition of § 1326 if deport-

---

2. Section 1326 was again amended in 1990. The 1990 amendment increased the maximum fine from $1,000 to the $250,000 provided under 18 U.S.C. § 3571(b)(3).

ed. Here, there is no dispute that the defendant was deported pursuant to a warrant of deportation which the government proposes to offer as evidence. No greater notice is required.[3]

## III

■ Lastly, the government seeks to exclude evidence that the defendant presented himself at an Immigration and Naturalization Service ("INS") inspection point in Puerto Rico and was admitted into the United States. Mancebo–Santiago alleges that he presented a Dominican Republic passport and a green card at the port of entry in Puerto Rico and that INS officials acting as agents of the Attorney General permitted him to enter the country. For the reasons stated below, on the record thus far presented to the Court, the Court will exclude all evidence relating to the circumstances of Mancebo–Santiago's reentry in Puerto Rico. However, the Court will consider the admission of any evidence that is the subject of a specific offer of proof demonstrating how such evidence is probative of any express consent of the Attorney General to the defendant's reapplication for admission given prior to the defendant's reembarkation. Thus far the defendant has not proffered any such evidence and the Government represents that no such evidence has ever existed because the defendant never sought the Attorney General's consent to reapplication.

In *United States v. Gay,* 7 F.3d 200 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994), the Court of Appeals for the Eleventh Circuit held that a previously arrested and deported alien who reenters the country with the permission of INS officials stationed at a port of entry is nonetheless subject to conviction under § 1326 if no other attempt was made by the defendant to secure the express consent of the Attorney General. The Court expressed its holding in straightforward terms, "Appellant neither sought nor received permission from the Attorney General to re-enter the United States, and thus his reentry was illegal." *Gay,* at 7 F.3d 201. Mancebo–Santiago argues that a defendant who is permitted to enter the United States by INS officials has obtained the express consent of the Attorney General to reapply, because such officials have been delegated the authority to grant consent on behalf of the Attorney General, and, in such a circumstance, have apparently done so. However, even assuming such a delegation, a deported alien who reenters the country without informing INS officials of the prior deportation simply cannot be said to have obtained the express consent of those officials to reapply for admission or to reenter.

■ The statute demands, by its requirement of express consent, that in order for the Attorney General or his or her agent to consent to an alien's reapplication for admission, there must be an awareness that the alien was previously deported. *See United States v. Abokhai,* 635 F.Supp. 845 (E.D.Mo. 1986) (holding that issuance of a new visa to a previously deported alien by the American consulate in a foreign country did not provide a defense under § 1326 where the defendant failed to advise the consul that he had been previously deported), *aff'd,* 829 F.2d 666 (8th Cir.1987), *cert. denied* 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988). Any other interpretation of the statute would clearly frustrate its purpose of keeping those aliens covered by the statute from reentering the country without the Attorney General's prior per-

---

3. Mancebo–Santiago argues that evidence that he was not provided by the INS with notice of the requirements of § 1326 is probative with respect to the issue of whether the Attorney General gave express consent for his reapplication for admission. This argument is unfounded. Even if the INS is empowered to grant the consent of the Attorney General, the failure to provide notice is simply irrelevant to the issue of whether the Attorney General gave *express* consent. A failure to provide notice is not in and of itself consent, and to the extent that the defendant is arguing that lack of notice is evidence of implied consent, the statute requires express consent to reapplication not implied consent. Even if evidence of a lack of notice was probative of the Attorney General's express consent, its probative value would be so small that it would appear to be offered for the legally irrelevant purpose of demonstrating to the jury the defendant's good faith or mistaken belief in the legality of his actions. It would therefore be excludable under Federal Rule of Evidence 403, because its probative value would be substantially outweighed by the dangers of unfair prejudice and misleading the jury.

mission. In *Gay,* the Court indicated that previously deported aliens could easily reenter the country without notifying any authorities of their prior deportation if § 1326 were construed to allow effective consent to be obtained by any alien who was permitted reentry by INS officials. The court explained that the INS's automated "lookout" system and "service lookout book" are not instantaneously updated whenever a person is deported. Therefore, a deportee can obtain reentry by presenting a foreign passport and other necessary documents at a port of entry within a short period after deportation. If the defendant's position were declared to be correct, such reentries would become legal.

■ With respect to Mancebo–Santiago's green card, additional concerns warrant exclusion. The mere fact that a previously deported alien who has reentered the country illegally has been granted a benefit or entitlement by the INS is not sufficient to establish the express consent of the Attorney General or any other defense under § 1326. In *United States v. Ramos–Quirarte,* 935 F.2d 162 (9th Cir.1991), the Court of Appeals for the Ninth Circuit held that the fact that the defendant had obtained Special Agricultural Worker status after his return to the United States was "in no way a defense to the charge that his return itself was illegal under section 1326." *Ramos–Quirarte,* 935 F.2d at 163; *see also United States v. Leon–Leon,* 35 F.3d 1428, 1432–33 (9th Cir.1994) (upholding the exclusion of a green card in a § 1326 prosecution on grounds of irrelevance). In *United States v. Quintana–Delgado,* 928 F.2d 1138 (Table), 1991 WL 40334, \*\*2 (9th Cir. Mar. 25, 1991) (unpublished disposition), the same court held that the approval of a relative immigrant visa by the Attorney General for a previously deported alien does not constitute the express consent of the Attorney General under § 1326. The court explained that such approval does not constitute consent, because the visa does not itself authorize automatic admission of immediate relatives, but only exempts them from numerical immigration limitations. In any

event, counsel for the defendant has represented to the Court that the green card that has been discussed cannot be found.

More significantly, the court emphasized the timing requirement of § 1326, which specifies that the express consent of the Attorney General to apply for readmission must be sought prior to reembarking for the United States or applying for admission from foreign contiguous territory. *Quintana–Delgado,* 1991 WL 40334 at \*\*2 (quoting § 1326(a)(2)(A)). In the present case, the parties have represented that Mancebo–Santiago reentered the United States in Puerto Rico, having flown there from the Dominican Republic. Mancebo–Santiago does not seek to admit any evidence showing that he applied to the Attorney General for permission to reapply for admission prior to his embarkation and the government asserts there is no such evidence. None of the evidence discussed by the defendant in his papers that concerns his presentation of a passport and green card in Puerto Rico and his admission to the United States is relevant to the question of whether the Attorney General expressly consented to his reapplication for admission to the United States *prior* to his reembarkation from the Dominican Republic. Evidence that the defendant presented himself at an INS inspection point in Puerto Rico and was admitted into the United States will therefore be excluded on the ground that it is irrelevant. *See Fed.R.Evid.* 402.

Even if any of the evidence subject to this motion *in limine* possessed any *de minimis* relevance, which the Court does not find, any probative value would be substantially outweighed by the dangers of unfair prejudice, misleading the jury, and confusion of the issues. *See* Fed.R.Evid. 403; *United States v. Fletcher,* 928 F.2d 495, 503 (2d Cir.) ("A trial court has broad discretion to determine relevancy and whether the probative value of evidence may be outweighed by other considerations such as its tendency to confuse the jury") (citations omitted), *cert. denied,* 502 U.S. 815, 112 S.Ct. 67, 116 L.Ed.2d 41 (1991).[4] The evidence appears to be calculat-

---

4. The government has also moved to exclude evidence of the defendant's passport because the

defendant has failed to produce it, although Federal Rule of Criminal Procedure 16(b)(1)(A) re-

ed to unduly prejudice the jurors by presenting them with evidence probative of the defendant's good faith and mistaken belief which are legally irrelevant.

**SO ORDERED.**

quires him to do so. The government has made its disclosure under Rule 16 and the defendant has failed to produce the passport, although his prior counsel provided the government with a xerox copy which the government claims it has not been able to verify. The government argues that if the defendant were to be allowed to introduce this evidence, it should be allowed to test it. Because, on the facts represented by the parties, the presentation of the passport in Puerto Rico is irrelevant, it is not necessary to reach the government's further argument that the passport and evidence of it should be excluded because it has not been produced.