**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Javier ORTIZ–VILLEGAS,**
**Defendant–Appellant.**

**No. 94–50107.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided March 13; 1995.

Derek W. Li, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Daniel S. Goodman, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge:

## I.

Javier Ortiz–Villegas appeals a district court judgment in which he was convicted for being a deported alien found in the United States without the permission of the Attorney General, a violation of 8 U.S.C. § 1326. We affirm the district court's judgment.

## II.

On October 18, 1990, Ortiz–Villegas was deported from the United States to Mexico. On the same day, he reentered the United States at the San Ysidro border checkpoint by showing his California driver's license to a checkpoint inspector. In May 1991, an INS agent discovered Ortiz–Villegas in a California state prison. Ortiz–Villegas was subsequently convicted of being a deported alien "found in" the United States without authorization, a violation of 8 U.S.C. §§ 1326(a), (b)(1) and (b)(2). He now appeals his conviction on the grounds that he cannot be convicted for being "found in" the United States unless (1) he reentered the country surreptitiously; and (2) he intended to be in the United States at the time he was found. We reject both of these arguments and affirm his conviction.

## III.

A. Surreptitious Entry

■ Ortiz–Villegas argues that the district court incorrectly interpreted 8 U.S.C. § 1326(a) to allow his conviction for being "found in" the United States despite the fact that he entered the United States through an official border checkpoint. We review interpretations of law, de novo. *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir.1994).

Section 1326 provides that:

any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, or attempts to enter, or is at any time *found in* the United States ...

shall be fined under Title 18, or imprisoned, or both.

8 U.S.C. § 1326 (1970 & Supp.1994) (emphasis added).

■ We reject Ortiz–Villegas' contention that he cannot be convicted of being "found in" the United States because he did not reenter surreptitiously. The plain language of the statute does not suggest that surreptitious entry is a prerequisite to prosecution for being "found in" the United States. Indeed, in *United States v. Ayala*, 35 F.3d 423 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1365, 131 L.Ed.2d 221 (1995), we stated that a person of ordinary intelligence can understand that the "found in" language of § 1326 prohibits deported aliens from reentering the United States without authorization or, if an alien already has reentered, from remaining in the country. *Id.* at 425. This recent explication of the plain meaning of § 1326 says nothing about surreptitious entry being an aspect of the offense of being "found in" the United States.

*United States v. Canals–Jimenez*, 943 F.2d 1284 (11th Cir.1991), the principal case upon which Ortiz–Villegas relies, does not persuade us to adopt a requirement that deported aliens enter the United States surreptitiously before they can be convicted of being "found in" the United States. The court in *Canals–Jimenez* did opine that Congress must have intended "found in" to refer to presence after a surreptitious entry because the statute also specifically punished entry. *Id.* at 1287. But the actual holding of *Canals–Jimenez* is that a deported alien cannot be prosecuted for being "found in" the United States if he or she has approached a border checkpoint in an attempt to reenter the United States, but has not made it past that checkpoint. *Id.* at 1288 (discussing

cases in which aliens apprehended at border checkpoints are properly thought of as detained at borders as opposed to being "in" the United States). The Eleventh Circuit has recently made it clear that the reference to surreptitious entry in *Canals–Jimenez* was mere dicta and that a deported alien could be convicted for being "found in" the United States when he entered through an official border checkpoint. *United States v. Gay,* 7 F.3d 200, 202 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994). We agree with *Gay.*

■ We also reject Ortiz–Villegas' argument that we would render the statute of limitations for illegal reentry into the United States meaningless if we were to allow him to be convicted of being "found in" the United States despite the fact that he reentered through an official border checkpoint. The case on which Ortiz–Villegas relies in making this argument, *United States v. DiSantillo,* 615 F.2d 128 (3d Cir.1980), involved a situation in which a deported alien who reentered the United States through an official border checkpoint was prosecuted under § 1326 after the five year statute of limitations[1] for illegal reentry had run. The *DiSantillo* court stated that when a deported alien reenters the United States through an official border checkpoint, the government has notice that he or she has committed the offense of illegal reentry into the country. In that situation, the court held, the five year statute of limitations for prosecution under § 1326 begins to run when the deported alien presents him or herself at the border checkpoint. *Id.* at 135–36. The court reasoned that when the government has notice that a deported alien reentered the United States without authorization, it should not be able to evade the statute of limitations for the offense of reentry by charging the defendant with being "found in" the United States. *Id.* at 136–37. Therefore, the court concluded, when a deported alien reenters the United States through an official border checkpoint, prose-

cution under § 1326 must commence within five years of that reentry.

We need not decide whether to adopt the rule of *DiSantillo,* because there is no reason to apply it to Ortiz–Villegas' case. The record shows that Ortiz–Villegas reentered the United States in October 1990. He was indicted for being "found in" the United States in August of 1993. Even if we were to hold that the statute of limitations began to run at the moment Ortiz–Villegas presented himself at the border checkpoint, charges were brought against him within the five year statute of limitations for prosecution of non-capital federal offenses. 18 U.S.C. § 3282 (1994). Thus no considerations underlying the statute of limitations requires us to limit Ortiz–Villegas' liability to prosecution for being "found in" the United States without authorization.

**B. Specific Intent**

■ Ortiz–Villegas urges us to reconsider, in the light of increased penalties the statute now carries, our long-standing rule that violation of § 1326 requires only a general intent to reenter the United States. Despite changes in penalties allowed for violations of § 1326, we continue to require only general intent to support a conviction under this statute. *Ayala,* 35 F.3d at 426.

■ We also reject Ortiz–Villegas' argument that he did not have the required intent to be "found in" the United States because he was involuntarily incarcerated within United States' borders at the time he was located. An alien who has been deported and voluntarily reenters the United States without authorization has the intent required to support a conviction for being "found in" the United States. *Id.,* 35 F.3d at 426; *United States v. Cupa–Guillen,* 34 F.3d 860, 863 (9th Cir., 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995). Intent to be in the United States at the moment he or she is located is not necessary.[2] Ortiz–Villegas voluntarily reentered

---

1. 18 U.S.C. § 3282 (1985 & Supp.1994).

2. It is true that in *Ayala,* we stated that a deported alien could avoid being "found in" the United States by departing after his or her illegal reentry. *Ayala,* 35 F.3d at 425. We did not, howev-

er, decide that the alien must have the intent to be in the country at the time of being found here. Nor would we apply such a requirement to Ortiz–Villegas, who was voluntarily in this country at the time that he was apprehended and convict-

the country and was therefore subject to conviction for being "found in" the United States without authorization.

### IV.

The judgment of the district court is affirmed.

AFFIRMED.

ed of a crime. His inability to depart this country was of his own making.