### UNITED STATES of America

v.

### Juan Antonio RIVERA.

### Criminal No. 96–0218–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 22, 1996.

Helen F. Fahey, United States Attorney, Alexander Thomas, Special Assistant United States Attorney, Alexandria, VA, for Plaintiff.

Jerome P. Aquino, Alexandria, VA, for Defendant.

### *SENTENCING MEMORANDUM AND ORDER*

ELLIS, District Judge.

#### Introduction

Defendant Juan Antonio Rivera is before the Court for sentencing after entering a plea of guilty on July 22, 1996 to Count 1 of an Indictment charging him with re-entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1).

The record reflects that at all times relevant to this case, defendant was a citizen and national of El Salvador. On June 26, 1989, defendant was deported from the United States. This deportation was subsequent to

a felony conviction for distribution of a controlled substance in the Circuit Court of Fairfax County, Virginia on September 30, 1987.

On May 2, 1996, agents of the United States Immigration and Naturalization Service ("INS") found defendant in Arlington County, Virginia. His presence in this country was illegal as INS records accurately reflect no application by defendant for permission to re-enter the United States after his 1989 deportation. INS records also reflect that on June 26, 1991, defendant applied for a work permit under the name of Luis Alonzo Rivera, indicating, of course, that following his 1989 deportation for commission of an "aggravated felony," [1] defendant returned to the United States without permission at least as early as June 1991.

### A. Contested Matters:

The sole contested issue in this sentencing concerns the proper version of the Sentencing Guidelines to apply in this case. Defendant contends that because the record reflects that he had already returned illegally to this country by February 1991, the Sentencing Guidelines in effect at that time must be applied. The government disagrees, arguing instead that the 1995 version of the Sentencing Guidelines must be applied because that is when defendant violated § 1326 by being "found" in the United States. This dispute is not inconsequential. Should defendant prevail, the 1990 Sentencing Guidelines Manual would apply, and he would face a Sentencing Guidelines range of ten (10) to sixteen (16) months imprisonment.[2] Yet,

should the government prevail, the 1995 Sentencing Guidelines Manual applies with the result that the Sentencing Guidelines range applicable to defendant shifts sharply upward to forty-six (46) to fifty-seven (57) months.[3] Thus, the question whether to apply the 1990 or 1995 Sentencing Guidelines Manual is central to fashioning a proper sentence for defendant.

■ The basic principles governing resolution of this question are well established. To begin with, convicted criminal defendants are ordinarily sentenced under the Sentencing Guidelines in effect at the sentencing date. See U.S.S.G. 1B1.11(a), (b)(1). But this is not an invariable rule; the Ex Post Facto Clause bars the use of Sentencing Guidelines provisions in effect at sentencing where the pertinent provisions have changed adverse to defendant between the date of the offense and the sentencing date. See Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987); United States v. Morrow, 925 F.2d 779, 782–83 (4th Cir.1991). In these circumstances, the Sentencing Guidelines in effect at the time of the crime must be used. See U.S.S.G. § 1B1.11(b)(1).

These principles, applied here, lead to the parties' sharply opposing contentions. Defendant claims that the 1990 version of the Sentencing Guidelines must be applied because the offense was committed in 1991 (the record reflects that he was already back in this country by then) and that, as a consequence, the Ex Post Facto Clause bars the use of the more adverse 1995 Sentencing Guidelines provisions. The government disagrees, arguing that the 1995 version of the

---

**1.** Defendant correctly concedes that his state felony conviction for drug distribution is an "aggravated felony" under 8 U.S.C. § 1326.

**2.** This result follows from an application of U.S.S.G. §§ 2L1.2(a) and 2L1.2(b)(2), which pertain, respectively, to "Unlawful re-entry into the United States" and "Previously deported after a conviction for an aggravated offense." The parties agree, correctly, that these are the governing Sentencing Guidelines sections. The parties also agree that if the 1990 Sentencing Guidelines Manual is applicable, then these sections yield offense levels of eight (8) and four (4), for a total offense level of ten (10) after subtraction of a two level credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. And because defen-

dant's criminal history falls within category III, the resulting Guidelines sentencing range under the 1990 Manual is ten (10) to sixteen (16) months.

**3.** This result follows from an application of the same Sentencing Guidelines sections, §§ 2L1.2(a) and 2L1.2(b)(2), which under the 1995 Sentencing Guidelines Manual yield a total offense level of 21 after subtraction of a three level credit for acceptance of responsibility. Although defendant's criminal history points increase by 2 under the 1995 Manual, his criminal history category remains III, and his sentencing range is therefore forty-six (46) to fifty-seven (57) months.

Sentencing Guidelines should apply because the offense was committed in 1996 when the defendant was found in this country. Obviously, the crux of this disagreement is a dispute over when the crime was committed—in 1991, by which time the record reflects defendant had returned to this country or in 1996, when the authorities actually found and arrested him on American soil.

■ Resolution of this dispute requires reference to 8 U.S.C. § 1326, the statute defining the offense at issue. In fact, this statute, by its terms, defines three distinct offenses. Put differently, the statute specifies three ways in which it can be violated. Thus, § 1326 provides that a deported alien commits a crime when, without the Attorney General's consent, he "[ (i) ] enters, [ (ii) ] attempts to enter, or [ (iii) ] is at any time found in, the United States."[4] So then, previously-deported aliens caught in the act of re-entry violate § 1326 in one of the first two specified ways. But many aliens who re-enter illegally after deportation elude detection, and are only caught later, sometimes years later, when they are "found," i.e., discovered somewhere within this country.[5] These aliens commit the crime of unlawful re-entry in the third specified way, namely by being "found" or discovered in the United States. By drafting the statute to include the crime of being "found" in the United States, Congress sensibly and deliberately cast a wide net to ensure that those previously deported aliens who re-enter this country illegally are caught in the statute's net even if they elude detection and capture at the time of re-entry. Obviously, every previously deported alien who is "found" in this coun-try must have entered the country sometime previously, thereby violating § 1326 in the first way specified by the statute. Yet, this may not suffice to ensure that a culpable alien is punished, for if § 1326 only prohibited entry and attempts to enter, many previously deported aliens, who can prove re-entry many years earlier, might escape punishment by pleading the statute of limitations. See 18 U.S.C. § 3282.[6]

■ In the instant case, it is readily apparent that defendant violated § 1326 on two occasions: (1) sometime prior to June 1991, when he re-entered this country after his 1989 deportation; and (2) in May 1996, when he was "found" or discovered in Virginia and arrested by INS agents. A work permit application indicates that defendant had already re-entered illegally at least once by June 1991, but the record does not disclose where, when or how many times defendant may have re-entered the country since his 1989 deportation. What is clear from the record, however, is that defendant, a previously deported alien, was "found" in Arlington, Virginia by INS agents in May 1996. He was specifically indicted for violating § 1326 in this way, and he admitted all the elements of this § 1326 violation in the course of the plea colloquy. It follows, therefore, that defendant violated § 1326 in May 1996, when the INS found, i.e., discovered, him in the United States, and it further follows that the 1995 Sentencing Guidelines Manual properly applies here.

Although no published Fourth Circuit opinion squarely addresses this issue, the result reached in this action finds firm support in the decisions of other circuits. These other decisions conclude, as here: (1) that a

---

4. The full text of the statute is as follows:
   [A]ny alien who ... has been arrested and deported or excluded and deported, and thereafter enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be fined under Title 18, United States Code, or imprisoned not more than two years or both.

8 U.S.C. § 1326.

5. In the context of § 1326, "found" plainly means, and is equivalent to, "discovered." See WEBSTER'S THIRD NEW INT'L DICTIONARY 647 (1993) (defining "discover" as "to detect the presence of: FIND, DISCERN"); WEBSTER'S II: NEW RIVERSIDE UNIVERSITY DICTIONARY 384 (1984) (explaining that "discover" means "[t]o be the first to find, learn of, or observe.").

6. 18 U.S.C. § 3282 establishes a five-year statute of limitations for federal criminal statutes, like § 1326, that do not contain such provisions.

previously deported alien may violate § 1326 not just when he re-enters this country without the Attorney General's consent, but also whenever he is later "found" within this country; and (2) that "found" in § 1326 means "discovered." [7]

### B. *Uncontested Matters:*

Apart from the issue treated in Part A, the parties have no objection to the Presentence Investigation Report ("PSIR"). Accordingly, the Court adopts the findings and conclusions of the PSIR as its findings and conclusions in this sentencing proceeding.

### C. *Motion for Departure:*

Not applicable.

### D. *Conclusions:*

1. Defendant's adjusted offense level is 24.

2. Defendant's total offense level is 21.

3. Defendant's criminal history category is III.

4. The range of punishment under the Guidelines is 46 to 57 months with at least one year of supervised release.

5. The Guidelines range of fines is $7,500 to $75,000. An additional statutory special assessment of $50 applies to each felony count. 18 U.S.C. § 3013(a)(2)(A).

6. Probation is not authorized.

### E. *Sentence Imposed:*

The Court commits defendant to the custody of the Bureau of Prisons for a period of forty-six (46) months.

Upon release from confinement, defendant is to serve a period of two (2) years of supervised release. As a condition of supervised release, defendant, immediately upon completion of his term of imprisonment, is to be surrendered to a duly-authorized INS official for deportation in accordance with established procedures provided by the Immigration and Naturalization act, 8 U.S.C. § 1101 *et seq.*

As a further condition of supervised release, if ordered deported, the defendant shall remain outside the United States.

Court imposes a $50 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A).

In light of the defendant's limited assets, the Court declines to impose a punitive fine or an additional fine to cover the costs of incarceration or supervised release.

### F. *Statement of Reasons for the Court's Sentence:*

The sentence imposed adequately satisfies the Sentencing Guidelines' goals relating to deterrence, retribution, and incapacitation.

---

7. *Accord, United States v. Gomez,* 38 F.3d 1031, 1033–34 (8th Cir.1994) ("This offense may be committed in three distinct manners: a previously deported alien may violate § 1326 by ... (1) entering, (2) attempting to enter, or (3) being found in the United States."); *United States v. Rodriguez,* 26 F.3d 4, 8 (1st Cir.1994) ("[W]e think it plain that 'enters,' 'attempts to enter,' and 'is at any time found in' describe three distinct occasions on which a deported alien can violate Section 1326."); *United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993) ("[T]he 'found in' provision informs an alien who, following deportation after conviction of a felony and without permission of the Attorney General, reenters this country illegally and remains here, that he will be deemed guilty of an offense when he is discovered."); *United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993) ("The clear language in 8 U.S.C. Section 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense."), *cert. denied,* 510 U.S. 858, 114 S.Ct. 170, 126 L.Ed.2d 129 (1993); *United States v. Canals–Jimenez,* 943 F.2d 1284, 1286–89 (11th Cir.1991) ("The phrase 'found in'

is synonymous with 'discovered in.' Any party who voluntarily approaches an INS station cannot be said to have been found or discovered in the United States."); *United States v. DiSantillo,* 615 F.2d 128, 135 (3d Cir.1980) ("The addition of 'found' to the statute when it was reenacted in 1952 is strong evidence that Congress intended it to differ in meaning from 'enter.'") (citations omitted); *United States v. Rivera–Ventura,* 885 F.Supp. 447, 449 (E.D.N.Y.) ("[S]ection 1326 describes three possible violations. The rules governing each violation are not necessarily the same."), *aff'd,* 72 F.3d 277 (2d Cir.1995).

The Ninth Circuit has reached essentially the result reached here by characterizing the crime of being "found" in the country as a "continuing offense." *See, e.g., United States v. Guzman–Bruno,* 27 F.3d 420, 423 (9th Cir.) ("A violation of 8 U.S.C. § 1326 for being found in the United States after a prior deportation is a continuing offense which continues so long as the alien remains in the country."), *cert. denied,* —— U.S. ——, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994).

The Court further **ORDERS** that this Sentencing Memorandum be appended to, and made a part of, the PSIR, pursuant to Rule 32(c)(3)(D), *Fed.R.Crim.P.*