87 F.3d 346
 96 Cal. Daily Op. Serv. 4592, 96 Daily Journal
D.A.R. 7408
Parminder SINGH, Petitioner-Appellant,
v.
Philip L. WATERS, Acting Director, INS; Immigration and
Naturalization Service, Respondents-Appellees.
 No. 95-15943.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1996.
Decided June 24, 1996.
 
 James Todd Bennett, Chico, California, for petitioner-appellant.
 William C. Erb, Jr., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent-appellee.
 Appeal from the United States District Court for the Northern District of California, Saundra Brown Armstrong, District Judge, Presiding. D.C. No. CV-94-03410-SBA.
 Before BROWNING and JOHN T. NOONAN, Jr., Circuit Judges, and MERHIGE,* District Judge.
 JOHN T. NOONAN, Circuit Judge:
 
 
 1
 Parminder Singh appeals the denial by the district court of his petition for habeas corpus. The case involves two points of prime importance in the congressional scheme for the fair treatment of aliens within our borders. Congress has created immigration judges, who, although they do not have the security of life tenure, are intended to act as judges--that is, as persons fearlessly and impartially applying the laws of the United States to the agency to which they are assigned; and whose orders are to be obeyed by such agency as the orders of other judges of the United States are to be obeyed. See 8 U.S.C. § 1252(b). Further, Congress has created a statutory right to counsel for aliens faced with the complicated labyrinths of an immigration hearing. See id. This right to counsel, although not guaranteed by the Sixth Amendment, is not to be lightly disregarded or effectively subverted by the Immigration and Naturalization Service (the INS or Service). See Castro-O'Ryan v. INS, 847 F.2d 1307, 1313 (9th Cir.1987). Holding that Singh was unlawfully deported by the Service from the United States and therefore remains under the restraint of an order of deportation, we hold that the district court has jurisdiction of the petition and should grant it.
 
 FACTS
 
 2
 Singh is a native and citizen of India, who entered the United States on a non-immigrant visa in 1980 and overstayed the visa. In 1983 he appeared before Immigration Judge Brian Simpson, who found Singh to be deportable as charged by the INS and granted him voluntary departure on or before June 9, 1983. Singh did not voluntarily depart, and a warrant of deportation was issued by the INS against him. On July 26, 1984 the INS ordered Singh to surrender for deportation on August 16, 1984 (the bag-and-baggage letter). The surrender notice went unclaimed and was returned to sender. Singh remained in the United States.
 
 
 3
 In July 1992 Singh married Emily Aguon Cheguina, a citizen of the United States, by whom he has three children, who are also citizens of the United States. A year later, on July 6, 1993, his wife filed with the INS a visa petition on his behalf and Singh filed an application to adjust his status to that of lawful permanent resident. Meanwhile, beginning on November 30, 1992, Singh's new counsel, James Todd Bennett, had requested Singh's file from the INS and had been notified in December 1992 that the INS could not locate the file but would contact him if it was found.
 
 
 4
 Singh and his wife were requested to report at the INS offices in San Francisco at 9:00 a.m., December 2, 1993, for their interview regarding approval of his wife's visa petition on Singh's behalf. Singh and his wife and three children appeared. His wife's visa petition in his behalf was granted, but Singh's petition to adjust his status was denied. Immediately thereafter officers of the INS handcuffed Singh, placed him under arrest, and removed him from the hearing room. On inquiry by his counsel Bennett, the District Deputy Director of the Deportation Branch of the INS told Bennett that it intended to deport Singh "as soon as possible."
 
 
 5
 Bennett drafted by hand a motion to reopen the deportation proceedings before Immigration Judge Simpson and a request for a stay of deportation. He filed the motion and request at 1:26 p.m. By 2:00 p.m., according to the immigration judge's later order, the district counsel for the INS had appeared before the judge and informed him that Singh was on a plane at San Francisco Airport scheduled to depart at 2:05 p.m. At 2:11 p.m., the immigration judge granted the stay of deportation. The district counsel then contacted the deportation officer who had accompanied Singh to the plane, asking him to stop the deportation. He was told that the plane had left the departure gate at 2:09 p.m. and that it was too late to stop Singh from being deported. No further effort was made by the Service to contact the plane or to return Singh to the United States.
 
 PROCEEDINGS
 
 6
 On January 14, 1994 Immigration Judge Simpson granted Singh's motion to reopen. The immigration judge declared that "it cannot be said that the Service's action in carrying out the outstanding warrant of deportation was per se unlawful." Nonetheless, he ruled that Singh had been unlawfully removed from the United States because according to 8 C.F.R. § 243.3(b), Singh was entitled to 72 hours advance notice of deportation after service of the bag-and-baggage letter of deportation. The INS argued that he had been so served by its letter of July 26, 1984. The immigration judge noted that the letter had been returned unclaimed and that there was no proof that Singh's counsel had received the letter. The judge further noted that Singh's new counsel, Bennett, had been deprived of notice of the impending deportation by reason of the INS's failure to find Singh's file or to let Bennett know when, as obviously had happened by December 2, 1993, the INS had discovered the file. On these two legal points--lack of notice to Singh and the keeping of his file from his counsel--the immigration judge ruled the deportation unlawful. The immigration judge also held Singh to be prima facie eligible for adjustment of status.
 
 
 7
 Turning to this question, the INS argued that the motion to reopen should be denied in the exercise of the judge's discretion because Singh had failed to report for deportation in 1984. The judge rejected this argument, again on the ground that there was no proof that Singh had received the bag-and-baggage letter. The Service then argued that his marriage to a United States citizen should not be a ground for reopening because he "did not acquire the equity of his current marriage until long after he failed to depart [from] the United States." The immigration judge noted that under § 245(e)(3) of the Immigration and Nationality Act an alien could adjust his status based on a marriage entered into during deportation proceedings if he established that the marriage was entered in good faith and not for the purpose of securing the alien's entry as an immigrant. The immigration judge found that Singh had established by the requisite clear and convincing evidence that he had married in good faith and not to secure his entry as an immigrant.
 
 
 8
 Finally, the Service urged against Singh that he had been convicted on April 23, 1982 of assault with a deadly weapon in violation of California Penal Code § 245(a) and sentenced to six months imprisonment and two years probation; the conviction had subsequently been reduced from felony assault to misdemeanor assault. He had also been convicted of the misdemeanor of driving under the influence in violation of California Vehicle Code § 23152(a). The immigration judge observed that the reduction of the assault charge to a misdemeanor meant that Singh had not been convicted of a crime involving moral turpitude and that driving under the influence has not been held to be a crime involving moral turpitude.
 
 
 9
 The judge concluded that Singh was not inadmissible due to his two convictions but that an evidentiary hearing was warranted to determine the effect of these convictions on his eligibility for adjustment of status. The judge concluded that Singh had "demonstrated that the favorable factors in his case may offset the adverse factor of [his] criminal convictions." Accordingly, the judge granted the motion to reopen in order to give Singh an opportunity to establish that he merited a favorable exercise of discretion for adjustment of status.
 
 
 10
 The INS appealed the order of the immigration judge. However, on January 31, 1994, when the immigration judge was notified that Singh was "personally unable to appear for a hearing," the judge "administratively closed" the case with no further action to be taken until the case was presented for recalendaring. The INS appealed the order of reopening, but not the stay of deportation.
 
 
 11
 Singh then filed a petition for a writ of habeas corpus in the district court. The petition was dismissed on the ground that the Board of Immigration Appeals (the BIA) was still considering the Service's appeal of the immigration judge's order reopening Singh's hearing. On June 27, 1994 the BIA dismissed the INS's appeal.
 
 
 12
 On September 23, 1994 Singh filed the present petition for habeas corpus under 8 U.S.C. § 1105a(a)(10), asking in the alternative for an order to show cause. The petition prayed the district court to order the INS to return Singh to the United States and preclude the INS from violating the immigration judge's stay of deportation issued on December 2, 1993.
 
 
 13
 On April 13, 1995 after hearing argument, the district court held that Singh's deportation was not unlawful and therefore the court lacked jurisdiction to grant the petition. The court reasoned that under 8 U.S.C. § 1105a(c) the court lacks jurisdiction when an alien has departed the country, but that under Ninth Circuit precedent the departure must be lawful for this bar to apply. The district court then addressed two arguments why Singh's deportation was unlawful. First, the district court held that Immigration Judge Simpson had "made a factual finding" that the INS deportation of Singh did not violate the stay; that this factual finding was supported by substantial evidence in the record; and that therefore the district court could not disturb the finding.
 
 
 14
 The district court then turned to Singh's second argument that he had not been given the 72 hour notice required by 8 C.F.R. § 243.3. The district court noted that § 243.3 had been amended in 1986 to require only that a deportation order be executed "no sooner than 72 hours after service of the decision" and that Singh had received the notice of decision on March 9, 1983. At that time he could have relied on the old form of the regulation which guaranteed him 72 hours notice before execution of the deportation order. But the district court ruled that that reliance was misplaced after the amendment in 1986 and Singh was bound by the 1986 rule, whether in fact he had notice of it or not. The district court did not address the argument that the failure of the Service to inform Bennett, Singh's counsel, that it had found Singh's file made ineffective Singh's right to counsel at the December 2, 1993 proceeding.
 
 
 15
 Singh appeals the denial of his petition by the district court.
 
 ANALYSIS
 
 16
 We hold that Singh was unlawfully removed, for two reasons, both of them matters of law:
 
 
 17
 First, the Service proceeded with his deportation after a stay of deportation had been issued by the immigration judge. No reason has been presented by the INS why it did not comply with this order, which went into effect at 2:11 p.m., the afternoon of December 2, 1993. Compliance could have been achieved in several ways: by radioing the plane and requesting it to return to the gate if it were still on the ground, or requesting it to return to San Francisco if it had actually left the ground, or directing the plane that Singh be placed on a plane to return to the United States from the first port at which the plane carrying him landed. Singh was not traveling out of the country of his own volition. He had been put on the plane deporting him by an officer of the INS. The captain and employees of the plane were the agents of the INS in effecting the deportation. They were, therefore, amenable to direction by the INS complying with the stay granted by the immigration judge. Umanzor v. Lambert, 782 F.2d 1299, 1302 (5th Cir.1986) (for habeas purposes an airline was the INS's agent); see also Ledesma-Valdes v. Sava, 604 F.Supp. 675, 679 (S.D.N.Y.1985). As the INS did not comply with the stay, the deportation was unlawful.
 
 
 18
 Second, by having the file of Singh and failing to inform his counsel, Bennett, that it had the file prior to the handcuffing and arrest on December 2, 1993, the Service effectively scuttled the right to counsel guaranteed to Singh by statute. 8 U.S.C. § 1252(b); see also Mendez v. INS, 563 F.2d 956, 958 n. 1, 959 (9th Cir.1977). The consequence was that Bennett was prevented from seeking a stay of deportation in an orderly way that would have prevented the physical removal of Singh from the United States. As the immigration judge ruled, this conduct also rendered the deportation unlawful.
 
 
 19
 Under the applicable statute an order of deportation "shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c). The statutory bar applies when the alien defaults in pursuing his administrative remedies or departs the country. The departure must be lawful. Mendez, 563 F.2d at 958. If the alien was kidnapped out of the country, he would not have departed. Id. at 959. Neither has he departed here when he was removed in violation of the immigration judge's order and after interference with his right to counsel. For the same reasons, he is not to be charged with having failed to exhaust his administrative remedies when the Service by physically removing him made the full reopening of his case impossible. Singh does not fall under § 1105a(c) but under § 1105a(a)(10): he is an "alien held in custody pursuant to an order of deportation." See Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir.1995).
 
 
 20
 We direct the district court to grant the writ of habeas corpus, ordering the INS not to violate the stay of deportation issued on December 2, 1993 and to permit Singh to return to the United States for the purpose of at a hearing before the immigration judge to determine whether discretion to adjust his status should be favorably exercised.
 
 
 21
 REVERSED and REMANDED for proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation