**UNITED STATES of America,**

v.

**Osvaldo FERMIN–RODRIGUEZ,
Defendant.**

**No. 97 CR. 386 (KMW).**

United States District Court,
S.D. New York.

April 2, 1998.

Mary Jo White, U.S. Atty., David Greenwald, Asst. U.S. Atty., New York City, for Plaintiff.

John Byrnes, Legal Aid Society, New York City, for Defendant.

## OPINION and ORDER

KIMBA M. WOOD, District Judge.

Defendant Osvaldo Fermin–Rodriguez ("Fermin") is charged with illegally reentering the United States subsequent to a deportation for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).[1] Defendant moves to dismiss the Indictment against him, as a matter of law, on the ground that the Government cannot establish an essential element of a § 1326(a) charge of illegal reentry, namely that he was "deported" within the meaning of § 1326. *See United States v. Flores–Peraza,* 58 F.3d 164, 166 (5th Cir. 1995) (deportation is essential element of § 1326 illegal reentry crime); *United States v. Mancebo–Santiago,* 875 F.Supp. 1030, 1032 (S.D.N.Y.1995) (same).

This motion calls upon the Court to address whether an alien is "deported" for the purposes of 8 U.S.C. § 1326 if the Immigration and Naturalization Service ("INS") removes an alien against his will from the United States at a time when the order authorizing his deportation is stayed pending an appeal from a Board of Immigration Appeals decision to one of the United States Circuit Courts of Appeals. It also requires the Court to address whether the argument that he was not "deported" constitutes a collateral attack on defendant's deportation proceedings or deportation order, thus implicating the limitations on collateral challenges prescribed by § 1326(d) and *United States v. Mendoza–Lopez,* 481 U.S. 828, 837–41, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

For the reasons set forth below, the Court holds that defendant's argument relates to the construction of a statutory term—"deported" in § 1326—and is not a collateral attack on either his deportation proceedings or the order resulting from those proceedings. The Court also holds that when an alien is removed from this country against his will by the INS at a time when his order of deportation has been stayed, the alien has not been "deported" for the purposes of § 1326. The Court thus grants defendant's motion to dismiss the Indictment.

### I. *Background and Procedural History*

To understand defendant's argument that he was not "deported" for the purposes of § 1326 requires a review not only of his immigration status, but also the procedural posture of the INS's attempt to deport him in 1992.

On July 26, 1968, INS issued Fermin an immigration visa permitting him to enter the United States from the Dominican Republic, where he was born. Thereafter, Fermin entered the United States and grew up in New York, but remained a citizen of the Dominican Republic. On May 15, 1990, Fermin pleaded guilty to criminal possession of a controlled substance in the third degree, in violation of New York Penal Law § 220.16, in the New York State Supreme Court, New York County. The indictment to which Fermin plead guilty charged him with possession of a heroin with intent to sell it. (Gov't Exh. V, *People of the State of New York v. Oswald Fermin,* Indictment No. 9N108107).

On January 17, 1992, the INS commenced deportation proceedings against Fermin by order to show cause. The INS alleged that Fermin was deportable on two statutory grounds: (1) that he had been convicted of

---

1. 8 U.S.C. § 1326(a) & (b)(2) provide:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter.

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or

(B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection-

. . .

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . . .

an aggravated felony, and was therefore deportable under the Immigration and Nationality Act ("INA") § 241(a)(2)(A)(iii), codified at 8 U.S.C. § 1251(a)(2)(A)(iii), and (2) that he had been convicted of a controlled substance violation, and therefore was deportable under INA § 241(a)(B)(i), codified at 8 U.S.C. § 1251(a)(2)(B)(i). After several hearings before an Immigration Judge Charles A. Wiegand, III, Judge Wiegand ruled on May 12, 1992 that Fermin was deportable on both of these statutory grounds. Judge Weigand denied Fermin's petition for a discretionary waiver of deportation under INA § 212(c), 8 U.S.C. § 1182(c), and ordered Fermin to be deported.

Fermin then appealed Judge Wiegand's decision to the Board of Immigration Appeals ("BIA") on the grounds that Judge Weigand (1) erred as a matter of law in finding that Fermin was deportable as an alien convicted of an aggravated felony pursuant to § 241(a)(2)(A)(iii) of the INA, and (2) erred in failing to grant Fermin's application of a waiver of deportation pursuant to § 212(c) of the INA. On September 3, 1992, the BIA issued a written opinion in which it decided that, although Fermin was deportable as an alien convicted of an offense relating to controlled substances pursuant to § 241(a)(2)(B)(i) of the INA, Judge Wiegand erred in concluding that Fermin was also deportable as an alien convicted of an aggravated felony pursuant to § 241(a)(2)(A)(iii) of the INA. The BIA found that the INS "had not sustained its burden of establishing deportability under [S]ection 241(a)(2)(A)(iii) of the Act and the immigration judge's decision with regard to that charge is accordingly reversed." (Def. Exh. F at 1.) The BIA affirmed Judge Wiegand's decision not to grant Fermin's application for a waiver of deportation pursuant to § 212(c) of the INA. Accordingly, the BIA affirmed Judge Wiegand's order of deportation and dismissed Fermin's appeal. On September 15, 1992, the INS District Director of Louisiana issued a Warrant of Deportation for Fermin. In accordance with the decision of the BIA, the Warrant indicated that Fermin was subject to deportation under § 241(a)(2)(B)(i) of the INA, but did not state that Fermin was subject to deportation under § 241(a)(2)(A)(iii) of the INA.

On October 2, 1992, Fermin filed a *pro se* "Petition for Review of the Final Deportation Order Issued and Entered by [the BIA]" in the United States Court of Appeals for the Fifth Circuit. Pursuant to Rule 15 of the Federal Rules of Appellate Procedure, the Clerk of the Fifth Circuit served Fermin's petition for review upon the Attorney General of the United States and upon the Director of the Justice Department's Office of Immigration Litigation on October 2, 1992; a copy of Mr. Fermin's petition for review was also sent to John B.Z. Caplinger, the INS District Director in New Orleans, which copy was received by the INS's New Orleans office on October 5, 1992.

In October 1992, § 106(a)(3) of the INA, codified as amended at 8 U.S.C. § 1105a(a)(3) (West, Westlaw USCA92 1992),[2] provided for an automatic stay of an order of deportation upon the filing of a petition for review in the appropriate Court of Appeals and service of that petition upon the applicable INS officials. In October 1992, § 106(a)(3) provided:

> Service of the petition for review shall be made upon the Attorney General of the United States and upon the official of the [INS] in charge of the [INS] district in which the office of the clerk of court is located. The service of the petition for review upon such official of the [INS] shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs or unless the alien is convicted of an aggravated felony, in which case the [INS] shall not stay the deportation of the alien pending determination of the petition of the court unless the court otherwise directs.

---

**2.** The automatic stay provided by § 106(a)(3) of the INA, 8 U.S.C. § 1105a(a)(3), was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Section 309(c)(4)(F) of the IIRIRA states that "service of the petition for review shall not stay the deportation of an alien pending the court's decision on the petition, unless the court otherwise orders."

8 U.S.C. § 1105a(a)(3). Under this provision, defendant properly served his petition for review. The exceptions to an automatic statutory stay did not apply in defendant's case. The BIA had reversed the finding of the immigration judge that defendant was deportable as alien who had been convicted of an aggravated felony under § 241(a)(2)(A)(iii) of the INA.[3] (Def. Exh. F at 1.) Further, the Fifth Circuit Court of Appeals did not enter any orders regarding Fermin's appeal until after October 30, 1992. On October 30, 1993, the INS placed Fermin on an American Airlines flight departing Miami, Florida to the Dominican Republic against his will. The Court finds that the automatic stay of deportation provided by § 1105a(a)(3) had taken effect at the time INS removed Fermin from the United States on October 30, 1992.

On November 16, 1992, with the assistance of an former fellow inmate, Fermin filed an "Emergency Motion" in the Fifth Circuit seeking the court to order the INS to repatriate him to the United States to continue to prosecute his appeal of the order of deportation. In its response to this "Emergency Motion," the INS conceded that "in light of the [BIA's] specific finding in this case that petitioner is not an aggravated felon, petitioner is entitled to an automatic stay of deportation pending a review by this Court of his petition for review." (Def. Exh. N at 2.) On that basis, the INS did not oppose Fermin's reentry into the United States "pending a review of this Court of his pending petition for review of his order of deportation." (Id. at 1.) The INS noted that it did not agree with the BIA's finding that defendant had not been convicted of an aggravated felony. (Id. at 2 n. 1.)

In a summary order dated December 21, 1992, the Fifth Circuit Court of Appeals granted Fermin's motion to compel the INS to repatriate him to the United States and ordered that upon repatriation Fermin "is entitled to an automatic stay of any further

deportation pending a review of this Court of his petition for review." (Def. Exh. 0 at 1.) There is no evidence that the INS made any attempts to comply with the Fifth Circuit's order. On April 21, 1993, the Fifth Circuit dismissed Fermin's appeal for want of prosecution for failure to file a brief within the time fixed by the rules. (Def.Exh. P.)

On July 20, 1995, Fermin was arrested in Manhattan by the New York City Police Department. (See Gov't Exh. W.) On November 29, 1995, Fermin was convicted of assault in the first degree and intimidating a witness in the third degree, in violation of New York Penal Law §§ 120.10(1) and 214.14(1), in the New York State Supreme Court, New York County. Fermin's earliest possible release from New York State custody is June 4, 2005. On June 12, 1997, the instant Indictment was brought against Fermin for illegally reentering the United States, subsequent to a deportation, under 8 U.S.C. § 1326(a). The one-count Indictment charges Fermin with having entered and having been found in the United States subsequent to his deportation and his "conviction for the commission of an aggravated felony, to wit, a conviction on May 14, 1990, in the Supreme Court of New York for criminal possession of a controlled substance in the third degree." (Def.Exh. U.) Section 1326(a) makes illegal reentry into the United States of an alien who has been previously deported a crime. Section 1326(b)(2) provides enhanced penalties for aliens whose deportations occur after their conviction of certain crimes, including those classified as "aggravated felonies." 8 U.S.C. § 1326(b)(1) & (b)(2); see United States v. Abreu–Cabrera, 64 F.3d 67, 75 (2d Cir.1995).

## II. Discussion

■ In order for the Government to meet its burden of proof in a 8 U.S.C. § 1326(a) illegal reentry prosecution, the Government must establish beyond a reasonable doubt that the defendant is an "(1) alien, (2) who

---

**3.** The Government suggests, without explicitly stating, that the BIA erred in concluding that the INS had not sustained its burden of establishing that Fermin was deportable as an alien convicted of an aggravated felony under § 241(a)(2)(A)(iii) of the INA. (Gov't Memo. at 4–5.) The Government also notes that, in retrospect, the INS's

concession that the automatic stay applied was improvident. (Id. at 10 n. 7.) The Government does not argue, however, that the automatic statutory stay provided by 8 U.S.C. § 1105a(a)(3) was not in effect at the time that Fermin was removed from the country by the INS.

has been arrested, and (3) deported, and (4) thereafter is found in the United States, (5) without having obtained the specific consent of the Attorney General." *United States v. Mancebo–Santiago*, 875 F.Supp. 1030, 1032 (S.D.N.Y.1995); *see United States v. Flores–Peraza*, 58 F.3d 164, 166 (5th Cir.1995); *United States v. Hernandez*, 693 F.2d 996, 998 (10th Cir.1982).

Defendant's argument is that, as a matter of law, the Government cannot meet its burden in prosecuting Fermin under § 1326 because the Government cannot establish that Fermin was ever previously "deported." To make this argument, defendant contends that the INS's removal of Fermin on October 30, 1992 from the United States was not a "deportation" because it was not performed pursuant to an order of deportation that was enforceable at the time of Fermin's removal. The Government makes two principal responses to this argument. First, the Government maintains that Fermin's challenge to his prior removal from the United States falls outside the limits on collateral attack of the validity of a deportation in a § 1326 prosecution provided by 8 U.S.C. § 1326(d) and *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Second, the Government argues that Fermin was deported within the meaning of § 1326. Because § 1326(d) imposes strict limits on what a defendant in a prosecution under § 1326(a) or (b) may challenge concerning his or her deportation order, I begin my analysis with the question of whether Fermin's argument that he was not deported for the purposes of § 1326(a) and (b)(2) runs afoul of the restrictions in § 1326(d); I then turn to construe "deported" in § 1326.

### A. *Collateral Attack or Statutory Construction*

■ The Government's contention that defendant's argument amounts to a collateral attack on his deportation order that falls outside the scope of such review provided by § 1326(d) and *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), is misplaced.

In *Mendoza–Lopez*, the Supreme Court considered the question of whether a "a federal court [in a § 1326 prosecution] must always accept as conclusive the fact of the deportation order, even if the deportation proceeding was not conducted in conformity with due process." *Mendoza–Lopez*, 481 U.S. at 834, 107 S.Ct. 2148. The Court found that there is no indication of congressional intent to sanction challenges to the validity of deportation orders in a § 1326 prosecution, but the Court nonetheless held that constitutional requirements of due process required that where the "deportation hearing was fundamentally unfair" and "the violation of the [alien defendant's] rights ... amounted to a complete deprivation of judicial review of the [deportation] determination," the deportation "in which these events occurred may not be used to support a criminal conviction." *Id.* at 838–42, 107 S.Ct. 2148. In *Mendoza–Lopez*, the Court found that the defendants were deprived of their rights to appeal and not informed about the relief obtainable on appeal. *Id.* at 842, 107 S.Ct. 2148. As a consequence, the Court held that dismissal of the indictment was proper. *Id.* at 842, 107 S.Ct. 2148.

Section 1326(d) codified the scope of collateral attack on deportation orders in a § 1326 prosecution authorized in *Mendoza–Lopez*. It provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that -
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The Government's view is that under both *Mendoza–Lopez* and § 1326(b) defendant's argument that he was not "deported" amounts to a collateral attack on his deportation order.

In response, defendant argues that he is not collaterally challenging his deportation proceedings or the validity of his deportation order. Such challenges, as defendant points out, generally concern the process that the aliens were provided during their deportation proceedings. Thus those challenges generally relate to issues such as whether the alien was deprived a right to counsel during the INS proceeding, *see e.g., United States v. Loaisiga,* 104 F.3d 484, 485 (1st Cir.1997), *cert. denied,* —— U.S. ——, 117 S.Ct. 2447, 138 L.Ed.2d 206 (1997), whether the alien was informed of alternatives to deportation by the immigration judge, *see e.g., United States v. Fares,* 978 F.2d 52, 54 (2d Cir.1992), or whether the alien was told by the immigration judge of his or her right to appeal, *see e.g., id.* at 54, *United States v. Holland,* 876 F.2d 1533, 1535 (11th Cir.1989). Defendant contends that, in contrast to such challenges to the validity of an order of deportation, he is arguing that because an automatic statutory stay of his order of deportation was in effect at the time he was removed from the United States by the INS, he was not "deported" within the meaning of the statute.

The Court finds defendant's argument persuasive. Defendant is litigating the scope and meaning of a statutory term, not challenging the validity of the deportation order or INS proceedings in his case. Accordingly, neither the strictures of § 1326(d) nor those articulated in *Mendoza–Lopez* prevent the Court from examining defendant's argument.

B. *"Deportation" under 8 U.S.C. § 1326(a) and (b)*

■ Relying on *Mendoza–Lopez* and cases interpreting it, the Government argues that proof that the prior deportation was lawful is not a required element of a illegal reentry prosecution under § 1326. In response, defendant contends that when an alien is removed from the United States during a stay of the order authorizing his deportation order he has not been deported under § 1326.

Neither the Court nor the parties have located any decisions that address the effect of a stay of a deportation order at the time of an alien's removal from the United States by the INS on whether the alien has been "deported" for the purpose of a § 1326 prosecution. However, the effect of the INS's removal of an alien from the United States during the operation of a stay of the alien's deportation order has been litigated in the context of a direct appeal of an order of deportation under the former § 106(c) of the INA, 8 U.S.C. § 1105a(c).[4]

In *Edwards v. INS,* 59 F.3d 5, 7 (2d Cir. 1995), the Second Circuit Court of Appeals commented that if the INS deported an alien in violation of a statutory (or other) stay of a deportation order, it would have "serious doubts" as to whether departure of the alien from the United States would automatically divest the court of subject matter jurisdiction. *Id.* But because the *Edwards* court found that no stay was in effect at the time of Edwards's deportation, it left this question for another day. *Id.; see also Baez v. INS,* 41 F.3d 19, 25 (1st Cir.1994) (suggesting that § 1105a(c)'s jurisdictional bar may not be applicable where INS "knowingly [and] unlawful[ly] deport[ed an alien] . . . for the specific purpose of shortstopping an alien's right to review").

The Ninth Circuit Court of Appeals has held that it was not deprived of jurisdiction over an alien's appeal under § 1105a(c), where the alien was removed from the United States by the INS during the operation of a stay of his deportation order. *Singh v. Waters,* 87 F.3d 346, 349 (9th Cir.1996). In *Singh,* the Ninth Circuit reasoned that under § 1105a(c) the removal of an alien from the United States in violation of a stay of his deportation order, like the removal of an alien by kidnap, does not deprive the alien of review under § 1105a(c). *Id.* The Ninth Circuit found that the INS's actions were unlawful. "As the INS did not comply with the stay, the deportation was unlawful." *Singh,* 87 F.3d at 349. The Ninth Circuit directed

---

4. 8 U.S.C. § 1105a(c) provided that an order of deportation "shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed the United States after the issuance of the order." 8 U.S.C. § 1105a(c). It was repealed by IIRIRA § 306(b).

the district court to order that the alien be permitted to return to the United States to appear at an immigration hearing. *Id.* at 350. In a similar fashion, because the INS did not comply with the automatic statutory stay in effect at the time that Fermin was removed from the United States, this Court finds that the INS's removal of Fermin was unlawful.

The Government directs the Court to language in *United States v. Mendoza–Lopez,* 481 U.S. 828, 834–37, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), and decisions relying upon it, for the proposition that "[i]n a section 1326 prosecution for illegal reentry, proof that the prior deportation was lawful is not required as an element of the offense." *United States v. Torres–Sanchez,* 68 F.3d 227, 229 (8th Cir.1995) (citing *Mendoza–Lopez,* 481 U.S. at 837, 107 S.Ct. 2148). On the basis of this proposition, the Government seems to be suggesting to the Court that the illegality of defendant's removal from the country by the INS does not prevent the Government from prosecuting him for illegal reentry under § 1326.

In *Mendoza–Lopez,* the Supreme Court made the following comment:

> Some of the Courts of Appeals considering the question [of whether § 1326 provides for a challenge to the validity of a deportation order] have held that a deportation is an element of the offense defined by § 1326 only if it is 'lawful,' and that § 1326 therefore permits collateral challenge to the legality of an underlying deportation order. The language of the statute, however, suggests no such limitation, stating simply that '[a]ny alien who has been arrested and deported or excluded and deported,' 8 U.S.C. § 1326(1), will be guilty of a felony if the alien thereafter enters, attempts to enter, or is at any time found in, the United States.

*Id.* Several Courts of Appeals have relied on this passage in *Mendoza–Lopez* in holding that the lawfulness of a prior deportation is not an element of the offense under § 1326. *See e.g., United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1096, 137 L.Ed.2d 228 (1997); *United States v. Torres–*

*Sanchez,* 68 F.3d 227, 229 (8th Cir.1995); *United States v. Holland,* 876 F.2d 1533, 1535 (11th Cir.1989).

In *Mendoza–Lopez,* and each of these decisions relying upon it, the defendant sought to collaterally challenge the deportation proceedings or the deportation order resulting from those proceedings in his § 1326 prosecution. *See Mendoza–Lopez,* 481 U.S. at 840–41, 107 S.Ct. 2148 (alien argues that he was not adequately informed of his right to appeal and eligibility to apply for suspension of deportation); *Alvarado–Delgado,* 98 F.3d at 493 (alien argued he was not informed of right to deportation hearing); *Torres–Sanchez,* 68 F.3d at 229 (alien argued he was denied right to counsel at deportation hearing); *Holland,* 876 F.2d at 1535 (alien argued that he was denied right to counsel, right to present evidence, right to appeal). In each these decisions, the alien was removed from the country pursuant to a facially valid and enforceable deportation order. *Cf. Mendoza–Lopez,* 481 U.S. at 830, 107 S.Ct. 2148 (no suggestion in decision that deportation order was unenforceable at time of deportation); *Alvarado–Delgado,* 98 F.3d 492–93 (same); *Torres–Sanchez,* 68 F.3d at 229–30 (same); *Holland,* 876 F.2d at 1534 (same).

In contrast, as discussed above, the Court finds that, at the time of defendant's removal from the United States, the order authorizing his deportation had been stayed. To stay an order "means to hold it in abeyance, or refrain from enforcing it." *Black's Law Dictionary* 1267 (5th ed.1979). Thus, at the time of his removal, defendant's deportation order was not enforceable.

■ There is a difference between the removal of an alien from the country pursuant to a valid and enforceable deportation order, although there may have been infirmities in the process that produced the order, and the removal of an alien in violation of an express statutory stay of his deportation order. In the former case, there is institutional authority for the issuance of a warrant of deportation; the enforcement arm of the INS has been triggered by an order of deportation. In the latter case, the enforcement mechanism of the INS acts without legal or institutional authorization; it acts without the nec-

essary institutional trigger. While proof that the proceedings authorizing a prior deportation were lawful is not an element of an illegal reentry prosecution, *see Torres–Sanchez*, 68 F.3d at 229, the Court holds that an alien has not been "deported" for the purposes of § 1326 if he was removed from the country by the INS without a facially valid deportation order. Accordingly, as a matter of law, the Court grants defendant's motion to dismiss the Indictment.

### III.  *Conclusion*

For the reasons set forth above, the Court grants defendant's motion to dismiss the Indictment.

SO ORDERED.