**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

EDGAR DANIEL NAVA, AKA Edgar
Nava Cortes, AKA Edgar Daniel Nava-
Cortes,

    Petitioner - Appellant,

 v.

DAWN CEJA, Acting Warden; et al.,

    Respondents - Appellees.

No. 12-57099

D.C. No. 2:12-cv-03106-VBF-JPR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted August 6, 2013
Pasadena, California

Before: SILVERMAN and WARDLAW, Circuit Judges, and CEDARBAUM,
Senior District Judge.[**]

---

 [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

 [**] The Honorable Miriam Goldman Cedarbaum, Senior District Judge
for the U.S. District Court for the Southern District of New York, sitting by
designation.

Edgar Daniel Nava appeals from the denial of his petition for habeas corpus for lack of jurisdiction. For the reasons that follow, we affirm.

On December 29, 2010, an immigration judge ordered Nava removed to Mexico. On April 29, 2011, the Board of Immigration Appeals (BIA) affirmed that decision. On May 5, 2011, Nava filed a petition for review in this court for a stay of the order of removal, which we denied for lack of jurisdiction. On October 25, 2011, an immigration judge set a $20,000 bond, which the BIA later reduced to $7,500. On April 3, 2012, the mandate for the denial of the petition for review issued, which terminated the temporary stay of removal. On April 5, 2012, Nava's sister attempted to post a bond but was rejected.

On February 17, 2012, while his petition for review was pending, Nava moved before the BIA to reopen proceedings. Nava argued in part that his motion was timely under 8 U.S.C. § 1229a(c)(7)(C)(iv), a provision pertaining to, <u>inter alia</u>, motions to reopen by aliens who have been battered or subjected to extreme cruelty by certain family members. On April 6, 2012, the BIA denied a request for a stay of removal pending its decision on Nava's motion to reopen. Nava was removed that day. On April 24, 2012, the BIA denied Nava's motion to reopen, explicitly finding, <u>inter alia</u>, that section 1229a(c)(7)(C)(iv) did not apply. Nava filed an appeal of the BIA's decision that day. We granted an unopposed motion to remand the case to the BIA on March 8, 2013.

On April 10, 2012, Nava filed a petition for habeas corpus under 28 U.S.C. § 2241, challenging his removal and the denial of his release on bond.  On September 14, 2012, the district court denied that petition.  This appeal followed.

A petitioner for habeas corpus must be "in custody" in order for the court to have jurisdiction over his petition.  Aliens removed before filing a petition do not ordinarily satisfy that requirement.  Miranda v. Reno, 238 F.3d 1156, 1158 (9th Cir. 2001).  The record is clear that Nava filed his petition after he was removed.[1]  In certain "extreme circumstances," however, a petitioner is constructively considered to still be "in custody."  Rivera v. Ashcroft, 394 F.3d 1129, 1138 (9th Cir. 2005).  But this is not such a circumstance.

Nava first argues that the exception for "extreme circumstances" applies because he was removed in violation of a stay.  See Singh v. Waters, 87 F.3d 346, 349-50 (9th Cir. 1996).  Nava relies on language in the battered aliens provision stating that "[t]he filing of a motion to reopen under this clause *shall only* stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals *if* the motion establishes that the alien is a qualified alien."  8 U.S.C. § 1229a(c)(7)(C)(iv) (emphasis added).  In holding that

---

[1] Both sides brief the question of whether Nava's petition is moot, and both the magistrate judge and district court framed Nava's petition in those terms.  However, such an analysis is unnecessary.  Since Nava was never in custody, jurisdiction never existed and the mootness doctrine is inapplicable.

section 1229a(c)(7)(C)(iv) did not apply, the BIA clearly found on August 24, 2012 that Nava was not a qualified alien.  Although this decision post-dated Nava's removal, the BIA had previously denied Nava's motion for a stay of removal because it found "little likelihood that the motion [to reopen] will be granted." That decision is reasonably construed as holding that Nava's motion to reopen did not establish that he was a qualified alien.   Since Nava was not entitled to a stay of removal, his removal was not in violation of any stay and the circumstances surrounding the removal did not constitute "extreme circumstances."  Nava seeks to forestall this conclusion by arguing that only this court, not the BIA, may determine whether he was a qualified alien.  His argument is foreclosed by the language of the statute, which treats status as a qualified alien as a condition precedent to obtaining a stay of removal.

Second, Nava argues that he should have been released on bond on April 5, 2012, the day before his removal.  This argument is meritless.  Once we denied Nava's petition for review on April 3, 2012, a 90-day removal period began, during which Nava's detention was required.  See 8 U.S.C. § 1231(a)(1)-(2); Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (9th Cir. 2008).

Finally, Nava argues without factual support that he was removed without notice to his counsel and despite assurances (given after the denial of his bond) that he would have a hearing before an immigration judge.  Nava does not explain what

difference notice would have made. Since the BIA had implicitly found that Nava was not a qualified alien, he was legally removed. Had Nava filed a petition prior to his removal, this court would have found that his removal was proper because, as noted above, it was not in violation of any stay. At most, Nava would have received a stay of removal until the BIA issued its final decision 18 days later. Nava's allegations do not rise to the level of extreme circumstances. Nava was not either actually or constructively "in custody." Accordingly, there is no statutory basis for jurisdiction over his petition.[2] Finally, Nava's reference to the Suspension Clause is unsupported and unsupportable.[3]

**AFFIRMED.**

---

[2] Since Nava was not "in custody" for purposes of habeas jurisdiction, the court need not decide whether 8 U.S.C. §§ 1252(a)(5) and (b)(9) independently preclude habeas jurisdiction.

[3] Nava's opposed motion to take judicial notice is denied.

*Nava v. Ceja*, No. 12-57099

WARDLAW, Circuit Judge, dissenting:

The majority affirms the district court's conclusion that it lacked jurisdiction over Nava's habeas petition because the petition was filed after he had been removed from the United States. While it is ordinarily true that an alien "cannot avail himself of habeas corpus jurisdiction [where] he has already been removed and therefore is no longer 'in custody,'" *Miranda v. Reno*, 238 F.3d 1156, 1158 (9th Cir. 2001), we have recognized an "extreme circumstances" exception to this general rule where the alien's removal was itself unlawful, *see id.* at 1159; *Singh v. Waters*, 87 F.3d 346, 349 (9th Cir. 1996). Because this "extreme circumstances" exception applies here, I respectfully dissent.

The crux of this appeal hinges on an opaque statute, which provides that when an alien moves to reopen his removal proceedings on the basis of a claim that he is eligible for cancellation of removal under the Violence Against Women Act ("VAWA"), *see* 8 U.S.C. § 1229b(b)(2), that filing "shall only stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien," 8 U.S.C. § 1229a(c)(7)(C)(iv). A separate statute defines a "qualified alien" to include one who "has a petition pending which sets forth a prima facie case for"

1

relief from removal. 8 U.S.C. § 1641(c)(1)(B). Thus, a motion to reopen that presses a claim for cancellation of removal automatically stays the applicant's removal, pending "all appeals," as long as "the motion establishes" that the alien has a prima facie case for cancellation of removal.

Nava was ordered removed by an Immigration Judge, and the Board of Immigration Appeals ("BIA") dismissed his appeal. Nava then sought review in our court. While his petition for review was pending before us, he moved to reopen his removal proceedings before the BIA so that he could pursue cancellation of removal under § 1229b(b)(2). We ultimately dismissed his petition for review, and Nava then asked the BIA to order a temporary stay of removal while it considered his motion to reopen. The BIA declined to do so, stating in its order (the "April 6 order") that "there [was] little likelihood that the motion will be granted." Nava was removed that day.

At the time Nava was removed, no adjudicating body had ever determined that he failed to set forth a prima facie case for cancellation of removal. The majority concludes that the April 6 order "is reasonably construed as holding that Nava's motion to reopen did not establish that he was a qualified alien," but that cannot be. All the April 6 order determined was that the BIA was unlikely to grant Nava's motion to reopen. The agency's own regulations expressly provide that

2

"[t]he Board has discretion to deny a motion to reopen *even if the party moving has made out a prima facie case for relief.*" 8 C.F.R. § 1003.2(a) (emphasis added); *see also INS v. Doherty*, 502 U.S. 314, 323 (1992) (recognizing the BIA's broad discretion to grant or deny a motion to reopen). Thus, nothing about the statement "there is little likelihood that the motion will be granted" provides any clues as to whether the BIA thought Nava's motion made out a prima facie case for cancellation of removal. It follows that he had not been determined to be ineligible for an automatic stay of removal under § 1229a(c)(7)(C)(iv) at the time of his removal.

The majority also relies on the fact that the BIA concluded in a later order ("the April 24 order") that Nava was statutorily ineligible for cancellation of removal under § 1229b(b)(2). But we are left to wonder what significance the April 24 order could possibly have. As the majority acknowledges, that order post-dated Nava's removal. The majority cites nothing to support its apparent conclusion that the government is free to remove an alien who may be entitled to a stay of removal, as long as the agency *later* determines (retroactively, we are left to assume) that he was not, in fact, qualified for a stay. Even if that strange reasoning were somehow correct, a panel of our court later remanded Nava's case to the BIA, so his motion to reopen remains pending to this day. The majority peers through

3

the looking glass to determine that somehow, despite all of this, Nava had been adjudicated to lack "qualified alien" status at the time of his removal. But the one thing that is clear here is that no entity ever adjudicated the "qualified alien" issue.

Even if the BIA had properly determined that Nava was ineligible for cancellation of removal *before* Immigration and Customs Enforcement ("ICE") executed his removal order—which it did not—that would not be the end of the matter. Section 1229a(c)(7)(C)(iv) provides for an automatic stay "pending the final disposition of the motion, including exhaustion of all appeals." 8 U.S.C. § 1229a(c)(7)(C)(iv). Although I agree with the majority that the statute "treats status as a qualified alien as a condition precedent to obtaining a stay of removal," that is of no particular use because the statute is silent as to how, when, or by whom the determination whether an alien has made out a prima facie case for relief should be made. The phrase "pending the . . . exhaustion of all appeals" suggests that the statute contemplates that a stay of removal should remain in effect through the completion of judicial review. *See Arteaga-de Alvarez v. Holder*, 704 F.3d 730, 737 (9th Cir. 2012) (holding that the court of appeals possesses jurisdiction to review cancellation of removal eligibility decisions by the BIA for errors of statutory interpretation). That interpretation gives meaning to the statute's usage of the plural "appeals." In contrast, to assume as the majority apparently does that

4

a cancellation applicant can be removed once the BIA deems him ineligible for cancellation, before judicial review has taken place, "violates the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992). Nava is thus entitled to a stay of removal until judicial review of his eligibility for cancellation of removal is finally exhausted. His removal was unlawful because it violated that stay, and he remained "in custody" when he filed his habeas petition. *See* 28 U.S.C. § 2241(c); *Miranda*, 238 F.3d at 1158-59.

The government argues that this reading implies that an alien with an obviously unavailing cancellation of removal claim can invoke the automatic stay and delay his removal simply by petitioning for review from the BIA's ineligibility determination, effectively reading the "qualified alien" requirement out of the automatic stay provision. But to the extent this poorly drafted statute is ambiguous, it should be interpreted in light of the purpose of VAWA's immigration provisions: "to permit battered spouses to leave their abusers without fear of deportation or other immigration consequences." *Matter of A- M-*, 25 I. & N. Dec. 66, 72 (BIA 2009). The automatic stay provision should be construed with an eye toward providing certainty that an alien will not be removed until a potentially meritorious cancellation of removal claim is fully litigated. The

5

majority ducks this difficult question by over-reading the record.

Regardless of how the statute should be read, it surely means that *someone* must determine that an alien lacks a "prima facie case" for cancellation of removal before ICE may remove him from this country. Because it is undeniable that no such determination was made with respect to Nava before he was removed, Nava's removal was unlawful, triggering the "extreme circumstances" doctrine. The district court also concluded that it lacked jurisdiction under the REAL ID Act, but the relevant jurisdiction stripping provisions, 8 U.S.C. §§ 1252(a)(5) and (b)(9), "apply only to those claims seeking judicial review of orders of removal." *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007). Nothing about the habeas relief Nava seeks would constrain the agency's future decisions in his removal proceedings or overrule its past ones. Rather, his petition merely asks the district court to hold that ICE acted in contravention of an automatic stay that neither the agency nor our court ever determined to be inapplicable. That relief is not predicated on any argument that the IJ or the BIA reached any incorrect legal conclusion, and is thus collateral to his removal proceedings. I would therefore hold that the district court possessed jurisdiction over Nava's petition for habeas corpus and remand for further proceedings.